# In the United States Court of Federal Claims

**No. 21-740C**

**Filed: March 4, 2021**
**Reissued: March 16, 2021[1]**

```
* * * * * * * * * * * * * * * *
                                  *
AGMA SECURITY SERVICE, INC.,      *
                                  *
                                  *
                                  *
            Protestor,            *
                                  *
v.                                *
                                  *
UNITED STATES,                    *
                                  *
            Defendant,            *
                                  *
                                  *
v.                                *
                                  *
RANGER AMERICAN OF PUERTO         *
RICO,                             *
            Defendant-Intervenor. *
                                  *
* * * * * * * * * * * * * * * *
```

**Alan M. Grayson,** Windermere, FL for protestor.

**Kara M. Westercamp,** Department of Justice, Washington, DC**,** Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, Washington, DC, for defendant. With her were **Elizabeth M. Hosford**, Assistant Director, Commercial Litigation Branch, **Robert E. Kirschman, Jr.**, Director, Commercial Litigation Branch, and **Brian Boynton,** Acting Assistant Attorney General, Civil Division. Of counsel was **Matthew Lane**, Office of Chief Counsel, Procurement and Fiscal Legal Division, Federal Emergency Management Agency.

**Jonathan D. Shaffer**, Smith Pachter McWhorter PLC, Tysons Corner, VA for intervenor. With him was **Todd M. Garland,** Smith Pachter McWhorter PLC, Tysons Corner, VA.

---

[1] This Opinion was issued under seal on March 4, 2021. The parties were given the opportunity to propose possible redactions, but no redactions were proposed. The original Opinion is hereby unsealed and reissued without redaction.

**O P I N I O N**

<u>HORN, J.</u>

In the above-captioned, post-award bid protest, protestor AGMA Security Service, Inc. (AGMA) challenges the decision of the Federal Emergency Management Agency (FEMA) to award a sole source bridge contract to intervenor Ranger American of Puerto Rico arguing that the "award of the Sole-Source Contract commits seven separate statutory violations," as well as "violation of the corresponding provisions in the Federal Acquisition Regulation."

**FINDINGS OF FACT**

The above captioned bid protest is the latest in a series of protests before both the United States Court of Federal Claims and the United States Government Accountability Office (GAO) regarding armed security services for FEMA in Puerto Rico. The facts and procedural history are set out in the court's December 29, 2020 Opinion in Case No. 20-926C, which is incorporated into this Opinion. Key relevant facts are restated below.

On November 19, 2019, FEMA issued Request for Proposal No. 70FBR220R00000002 (RFP) for "contracted Protective Service Officers (PSO) and Patrolled Services to safeguard federal employees, visitors and property at both temporary and fixed facilities during disaster and emergency declarations for DR-4339 (all counties and municipalities within the Commonwealth of Puerto Rico)." Ranger American of Puerto Rico was the incumbent contractor for the predecessor contract which provided "the same armed security services for FEMA in Puerto Rico."

The RFP indicated that "[t]he Government intends to award a Labor Hour type contracts [sic] resulting from this solicitation to the responsible offerors whose offers, conforming to the solicitation, are most advantageous to the Government, price and other factors considered. Award will be made to the responsive, responsible contractor who provides the best-valued solution to the Government." The period of performance was a one year base period, and then a one-year option period.  The RFP explained:

> The acquisition and source selection are being conducted in accordance with the procedures of Federal Acquisition Regulation (FAR) Parts 12 and 15. The acquisition will be conducted using Best Value as the evaluation methodology. Proposals will be evaluated and rated but not ranked using the non-price factors listed below. A rating of "Unacceptable" in any of the below technical factors will render the entire proposal technically unacceptable and, therefore, not eligible for award.
>
> 1. Work Plan
> 2. Project Management Plan
> 3. Quality Control Plan
> 4. Past Performance

5. Price[.]

Additionally, the RFP included a "Local Area Documentation Requirement" which required any offeror to represent that it does or does not "reside or primarily do business [sic] in the set-aside area." Protestor AGMA and intervenor Ranger American of Puerto Rico were among nine offerors which submitted timely proposals to FEMA in response to the RFP, and per the requirements of the RFP, AGMA and Ranger American of Puerto Rico both indicated "the offeror represents that it does reside or primarily do business in the set-aside area." AGMA and Ranger American of Puerto Rico both submitted supporting documentation with their proposals.

After the Source Selection Evaluation Board (SSEB) completed the evaluation of the proposals, on March 3, 2020, the contracting officer issued an initial Award Decision Memorandum, which summarized the background of the procurement and the evaluations of the SSEB, and included a technical evaluation, price evaluation, a best value analysis and finally an award decision. The initial Award Decision Memorandum included four charts for a summary of the technical ratings: a rating chart, an empirical values rating chart, a ratings chart breakdown, and the overall rating range.[2] The initial Award Decision Memorandum concluded:

> AGMAs overall rating is Satisfactory on both technical and past performance. Although Ranger received a rating of Good. [sic] Contracting Officer determined that there was no rational that substantiates paying a higher price to Ranger when the same services could be provided from AGMA. . . . AGMA's proposal offers the best overall value to the Government and price is determined to be fair and reasonable.

On March 13, 2020, FEMA made the award to AGMA, and notified Ranger American of Puerto Rico of the same. Ten days later on March 23, 2020, Ranger American of Puerto Rico filed a protest at the GAO. In response to Ranger American of Puerto Rico's GAO protest, on April 13, 2020, FEMA notified GAO that the agency intended to take corrective action, and on April 15, 2020, GAO issued a decision which stated, in part: "We dismiss the protest based on the corrective action taken by the agency."

On June 15, 2020, the contracting officer issued a Revised Award Decision Memorandum, albeit without seeking revised proposals. In the Revised Award Decision Memorandum, the contracting officer indicated that

> The Solicitation stated that technical factors would be more important than price. Offeror 6 (Ranger) had a 50% higher technical score than AGMA and only a 20% higher price. Ranger had a higher rating with regard to the

---

[2] Although the RFP makes no mention of an "empirical values ratings" system, the contracting officer included the empirical values ratings chart in the initial Award Decision Memorandum.

Project Management Plan, Quality Control Plan, and Past Performance. While Offeror 2's (AGMA) proposal was perfectly adequate, Offeror 6's (Ranger) was significantly better.

For the award decision, the contracting officer concluded:

Based on the integrated assessment of all proposals in accordance with the specified evaluation factors, it is hereby recommended that the award be made to Ranger under contract No. 70FBR220C00000019. Ranger's proposal is significantly stronger and offers the best-valued solution to the Government, and the price is determined to be fair and reasonable.

On June 15, 2020, the same day the contracting officer issued the Revised Award Decision Memorandum, the contracting officer made the award to Ranger American of Puerto Rico. On June 23, 2020, FEMA terminated for convenience AGMA's previously awarded contract, after which the contracting officer awarded the contract to Ranger American of Puerto Rico.

On July 29, 2020, AGMA filed a bid protest complaint in this court, as well as a motion for injunctive relief. AGMA first argued that "FEMA improperly accepted Ranger's certification as a local firm, and FEMA should have rejected Ranger's proposal on this basis" in violation of the Stafford Act. Additionally, protestor argued, "FEMA improperly reevaluated the Ranger and AGMA proposals, and decided to terminate the AGMA Contract and make award to Ranger." Therefore, protestor contended that FEMA's award to Ranger American of Puerto Rico "was arbitrary, capricious, an abuse of discretion, contrary to law and without the procedures required by law."

On December 29, 2020, the court issued a decision. See generally AGMA Sec. Serv., Inc. v. United States, No. 20-926C, 2020 WL 8182122 (Fed. Cl. Dec. 29, 2020). The court first determined that "Ranger American of Puerto Rico's representations were sufficient to meet the requirements of the Stafford Act and FEMA acted reasonably to rely on those representations." Id. at *22. Next the court addressed AGMA's contention that FEMA improperly re-evaluated Ranger American of Puerto Rico's and AGMA's proposals. Although trying to understand the agency's actions, the court nevertheless determined:

Given the paucity of information in the initial Award Decision Memorandum or in the Revised Award Decision Memorandum regarding the numerical ratings assigned to Ranger American of Puerto Rico and AGMA, and how the numerical ratings were applied, compared to the adjectival ratings, the court is not able to conclude that FEMA used a different basis to re-evaluate the proposals after the corrective action than was used prior to the GAO dismissal, notwithstanding the award to Ranger American of Puerto Rico instead of to AGMA. The court finds no clear explanation in the record for how the numerical ratings, and then the adjectival ratings, were assigned to

the offerors. Additionally, the court is unable to decern the basis on which
the agency used the same ratings to make an award to Ranger American
of Puerto Rico instead of to AGMA in the Revised Award Decision
Memorandum after making an award to AGMA in the initial Award Decision
Memorandum.

Id. at *35. Regarding FEMA's evaluations after the corrective action, the court determined

at no point, after the corrective action was undertaken did the contracting
officer explain why the corrective action and the revised evaluations were
occurring, why revisions of proposals were not required by agency, why
particular evaluation revisions were undertaken by the agency, or what was
wrong with the previous evaluation. Taken as a whole, the actions taken by
the contracting officer after the corrective action are considered by the court
to be arbitrary and capricious.

Id. at *36. Therefore, the court granted protestor's motion for injunctive relief. In the court's
decision, however, the court noted: "Given the season, and not to cause an untoward
disruption of service in Puerto Rico, the injunction shall be effective as of **Friday, January
8, 2021**. As of January 8, 2021, FEMA shall be enjoined from continuing the performance
of Ranger American of Puerto Rico's contract, Contract No. 70FBR220C00000019." Id.
at *41 (capitalization and emphasis in original).[3]

After the court's December 30, 2020 Opinion, FEMA decided to issue a sole source
bridge contract to Ranger American of Puerto Rico. As explained in a January 19, 2021
declaration of Carolyn Knight, submitted after the sole source decision had been made
and the sole source contract had been award,[4]

because the time between December 31, 2020 and January 8, 2021 was
insufficient for a full and open competition for a new solicitation, and there
was no contract vehicle currently in place, the Agency determined that a
short-term bridge contract would be required to prevent a lapse in services

---

[3] Despite finding in favor of protestor, AGMA filed a motion for reconsideration on January
7, 2021, framing its motion for reconsideration as a "motion for a preliminary injunction
and revised permanent injunction," for FEMA's "award, or imminent award, of a sole-
source contract to Intervenor Ranger American of Puerto Rico, Inc. ('Ranger'), to perform
the requirement at issue in this procurement protest, following the Court's entry of a
permanent injunction against FEMA's previous contract award to Ranger." On January
10, 2021, the court denied the motion for reconsideration. Three days later, on January
13, 2021, AGMA filed its complaint in the above captioned bid protest.

[4] The January 19, 2021 declaration of Carolyn Knight was obtained by defendant at the
request of the court which had expressed concerns about the lack of decision making
documents in the record at the initial hearing. Ms. Knight's declaration was included in
the Administrative Record which was filed with the court on January 19, 2021.

and the catastrophic damage that such a lapse would cause. The decision to move forward in this manner was made late in the day on December 31, 2020, and required consultation with the contract team. The next day, January 1, 2021 was a Federal holiday. The contract team began work on plans for a sole source contract on Monday, January 4, 2021, pursuant to 41 U.S.C. § 3304(a)(2), which permits a sole source award when there is an unusual and compelling urgency and the Government would be seriously injured unless the Agency is permitted to limit the number of sources from which it solicits proposals.

(capitalization in original). Contracting Officer Carolyn Knight indicated in her declaration that "[o]n January 5, 2021, I sought a proposal from Ranger [the entity performing the requirement at the time] to provide services for the bridge contract. Ranger responded with a proposal on January 6. I determined that Ranger's prices were acceptable and the Bridge Contract was executed with Ranger on January 7," 2021. The sole source bridge contract was for a term of 150 days[5] at a cost of $2,367,751.50. Like the previously enjoined procurement, the sole source bridge contract continued to solicit for a requirement of "600+ armed guards," unlike the procurement that FEMA intended to solicit to replace the sole source bridge contract which would have a requirement of fewer than 200 armed guards.

On January 11, 2021, Tyuana L. Bailey, the Procuring Activity Advocate for Competition, signed a "Justification and Approval for Other Than Full and Open Competition" (Sole Source Justification) for the sole source bridge contract award to Ranger. The Sole Source Justification for the sole source bridge contract began:

Pursuant to the requirements of 41 U.S.C [sic] [§] 1901 as implemented by the Federal Acquisition Regulation (FAR) Subpart 13.501(a) and in accordance with the requirements of FAR 13.501(a)(ii), the justification for the use of the statutory authority follows:

**1. Agency and Contracting Activity.** The Department of Homeland Security, Federal Emergency Management Agency (FEMA), Office of the Chief Procurement Officer (OCPO), proposes to enter a contract on a basis other than full and open competition.

***2.* Nature and/or Description of the Action being Approved.** *A short paragraph or two describing the effort to be placed on contract, or the modification action. This section should include all of the following information:*

---

[5] On January 21, 2021, a bilateral modification of the sole source bridge contract was executed and reduced the term of the bridge contract from 150 days to 60 days, with three, 30 day option periods so that if all the options are exercised, the length of the sole source bridge contract would ultimately be 150 days.

(a) The FEMA requires the provision of a short-term bridge contract for continued Armed Security Guard Services in support of the FEMA's Recovery mission, Disaster (DR)-4339-Puerto Rico (PR). The contractor shall perform duties/tasks necessary to provide Protective Service Officers (PSO)s for physical security services throughout the entire island of Puerto Rico including municipalities of Vieques and Culebra.

. . .

*3.* **Description of Supplies/Services.** *Describe the supplies or services to be acquired. Include the purpose the supplies or services are intended to fulfill or the function the supplies or services provide.*

The requirement is to provide continued Armed Security Guard Services through the provision of Protective Service Officers (PSOs). The contractor shall perform duties/tasks necessary to provide PSOs for physical security services throughout the entire island of Puerto Rico including municipalities of Vieques and Culebra. Patrol vehicles shall be provided, when required by FEMA, based on location characteristics, vulnerabilities and risks. The period of performance will be 150 calendar days.

**4. Identification of Statutory Authority Permitting Other Than Full and Open Competition.**

The statutory authority permitting other than full and open competition is 41 U.S.C. [§] 1901 implemented by the FAR Subpart 13.501(a), Special documentation requirements, Sole source acquisitions. The limitation on the period of performance of 150-day at HSAR [Homeland Security Acquisition Regulation] 3006.302-270 applies.

(capitalization and emphasis in original) (brackets added). The Sole Source Justification continued:

*6.* **Demonstration that the proposed contractor's unique qualifications or the nature of the acquisition requires use of the authority cited**. *This paragraph is one of the most important parts of the J&A [Justification & Approval] and should clearly identify why the proposed action must be accomplished through other than full and open competition. Provide a well-reasoned, detailed discussion of the issue that will make it clear to someone who is unfamiliar with your organization or your requirement why full and open competition cannot be used for this procurement. The following information must be included:*

The proposed contractor, Ranger, is currently performing the services required effectively and satisfactorily under contract 70FBR220C00000019. Given the short timeline at issue, a transition to another contractor would

introduce unnecessary risks and uncertainties that would be detrimental to the interests of the government.

(a) Rationale for using the authority cited in section 4 of the J&A;

Due to the Court of Federal Claims (COFC) ruling in response to the protest submitted by the contractor AGMA against the award of the existing FEMA contract with the contractor Ranger, the use of other than full and open competition is required to award a short-term Firm Fixed Price, Labor Hour (FFP, LH) bridge contract in order to provide continued Armed Security Guard Services in support of the FEMA's Recovery mission, Disaster (DR)-4339-Puerto Rico (PR). The ruling enjoins FEMA from continuing the performance of the contract currently in place to provide these services as of January 8, 2021. The ruling states that AGMA "has been deprived the opportunity to compete fairly for a contract." In order to correct this harm, a new contract under a full and open competition procedure will be awarded. However, continued services are required to maintain the safety, security and health of the current federal employees, visitors and property at all existing temporary and fixed facilities currently being occupied in response to DR-4339-PR. Based on the COFC ruling, a nine-day acquisition timeline to solicit and award a new contract under full and open competition procedures is unattainable.

(b) Details covering what events lead to the situation requiring use of other than full and open competition procedures including whether any portion of the work can be segregated to allow for competition;

On December 30, 2020, the FEMA received notification of the COFC ruling in response to the protest submitted by AGMA against the award of contract 70FBR220C00000019 to Ranger in response to solicitation 70FBR220R00000002. The ruling required the FEMA end the current contract awarded to Ranger by January 8, 2021. Therefore, due to extraordinary limitation in acquisition lead time, there is not any portion of the work that can be segregated to allow for competition. However, this short-term contract is being sought to allow adequate acquisition lead time to solicit an award under full and open competition procedures with limitations to local area set aside under the Stafford Act.

(c) Summarize alternatives considered and why they will not work; and

Due to the acquisition lead time limitation, the only other alternative considered was to award a short-term sole source contract to AGMA. However, it was considered in the best interest of the FEMA to award a short-term contract to the existing contractor, Ranger, since the contractor was already in place effectively and satisfactorily performing. Moreover, the lack of adequate time to both award to AGMA and transition from Ranger poses substantial risk to continuity of operations; therefore, increasing risk

to safety, security and health of the current federal employees, visitors and property at all existing temporary and fixed facilities currently being occupied in response to DR-4339-PR. The risk is viewed as detrimental to the interests of the government. Because the current Ranger contract must be terminated and the previous AGMA contract was terminated, there is no existing vehicle by which the FEMA can obtain these services and no legal method by which the Agency could reinstate either contract.

(d) Impact to the mission that would result if the J&A is not approved and, consequently, the product or service not provided.

See Section b above.

(capitalization and emphasis in original). The Sole Source Justification also stated:

**7. Description of Efforts Made to Ensure that Offers are Solicited from as Many Potential Sources as is Practicable.**

Offerors will be solicited from as many potential sources as possible under the new solicitation that will be posted to the Contract Opportunities of beta.SAM.gov as required by FAR 5.201 a synopsis. In the case of this unusual and compelling urgency requirement, posting will be made within 30 days after contract award, in accordance with 6.305 procedures at paragraphs (b), (d), (e), and (f).

**8. Determination by the Contracting Officer that the Anticipated Cost to the Government will be Fair and Reasonable.**

The contracting officer will determine that the anticipated price(s) will be fair and reasonable based on a comparison of the contractor labor costs proposed to the costs paid for services under current competed contract and previous historical awards for similar contracts and labor categories.

***9.* Description of Market Research.** *Market research is required by FAR Part 10, and the results of the market research should be summarized here. Include the following information:*

Market research was not conducted as the Government determined that the time period from the previous market research current and relevant within 18 months. The market research is available under solicitation 70FBR220R00000002.

***10.* Any Other Facts Supporting the Use of Other Than Full and Open Competition.** *This section presents an opportunity to strengthen the justification by presenting supplemental or supporting information. Do not summarize or duplicate information already stated in previous sections. This section should include information such as:*

NONE[.]

(capitalization and emphasis in original).

As explained in Contracting Officer Carolyn Knight's January 19, 2021 declaration:

Because the market research from the previous solicitation remained accurate and had been conducted within 18 months, in accordance with FAR 10.002(b)(1), we did not conduct new market research. According to the market research, a number of contractors could theoretically provide armed guard services, including Ranger, AGMA, and other offerors from the previous solicitation. I had also been informed that AGMA's attorney had indicated that his client was "ready, willing and able to perform the requirement at issue." The contract team discussed internally whether it was practicable to ask any or all of those offerors for proposals. In making our decision that it was not practicable to ask other offerors for proposals, we considered that, in this case, a contractor's subjective belief that it is ready to perform is not indicative of whether that contractor could have security guards in place on the ground at sites quickly enough to prevent a lapse during a very short transition period. The contractor must compile a list of proposed security guards that are available and willing to work for that contractor on the contract. Then, the contractor must submit that list to FEMA. FEMA's Office of the Chief Security Officer (OSCO) then must complete an approval process for each of these proposed guards that includes a full background check. That process takes, on average, two weeks, but can be longer for some proposed guards who are required to answer additional questions or present additional documentation.

(capitalization in original). The declaration of Ms. Knight stated further:

Even if the approval process could be expedited for AGMA employees that had previously been approved, we determined that this still would not be sufficient. OCSO [Office of Chief Security Officer] had previously vetted 137 AGMA employees, who remained active until July 2020. The work is currently being performed by at least 190 Ranger employees. Even if that reduced number of AGMA employees could have been sufficient, the following would have been required to ensure that the 137 employees would be in place by midnight on January 7: (1) ascertainment and confirmation within 24 hours (January 4-5) that all 137 of those employees identified six months ago are still available; and (2) completion of the OSCO approval process within 48 hours (January 5-7), rather than the standard two weeks in order to have those employees in place by midnight on January 7. Although it is technically possible that these requirements could have been

fulfilled, it created an unacceptable risk that there would be a lapse of services during the transition.

Although AGMA (or any other number of offerors) may have been capable of performing the contract, the truncated transition time created an unacceptable level of risk that there could not be a smooth transition and that the Agency would be left without services for a period of time after January 8. Even if a contractor like AGMA could move quickly, the two-week OCSO approval process would be extremely problematic. For example, if AGMA had given the Agency a list of employees on January 5, it likely would have taken OCSO until at least January 18 (or possibly longer) to vet and approve the available employees. And the only representation we had from AGMA's attorney was that his client was "ready, willing, and able" to perform, but he did not include any other information or documents that actually indicated a certainty that his client could perform, such as providing a list of available employees or showing any affirmative steps that his client had taken to expedite the transition process. Thus, we determined that it was not practicable to seek proposals from anyone other than the incumbent.

(capitalization in original). Ms. Knight concluded:

Even with a longer transition period from the Court's enjoining of Ranger's continued performance of the Ranger Contract to award of the bridge contract, rather than the six business (nine calendar) days permitted, FEMA likely would have still awarded the bridge contract to the incumbent, Ranger, regardless of whether it had received a lower-priced proposal from another contractor, like AGMA. The incumbent was performing the services required effectively and satisfactorily and any transition creates risk of catastrophic consequences for the entire Puerto Rico recovery effort. FEMA must balance this risk with the need for full and open competition in the procurement process. Because this is a short-term bridge contract that is only intended to allow for a full and open competition for a longer-term award, the Government in this situation is best served by avoiding the unnecessary risk of an additional transition and providing a full and open competition for all contractors to compete for the longer-term contract as soon as possible.

After the award of the sole source bridge contract to Ranger American of Puerto Rico, on January 13, 2021, AGMA filed a post-award bid protest in the United States Court of Federal Claims alleging FEMA had made an improper sole source award to Ranger American of Puerto Rico.[6] After an initial hearing with the parties, the parties

---

[6] As filed, protestor's complaint had two counts, first, "Improper Sole-Source Award to Ranger," and, second, "Improper Cancelation of Solicitation." (capitalization in original). On February 10, 2021, protestor filed a motion to dismiss the second count without prejudice. On February 10, 2021, the court granted protestor's motion.

briefed cross-motions for judgment on the Administrative Record. In its motion for judgment on the Administrative Record, protestor argues that in making the sole source award to Ranger American of Puerto Rico, FEMA had not complied with 41 U.S.C. § 3304. Specifically, protestor alleges that with regard to 41 U.S.C. § 3304, "FEMA failed to solicit proposals from 'as many potential sources as practicable,'" "FEMA failed to consider proposals from anyone other than Ranger, even though FEMA would not have been 'seriously injured' if it had considered such proposals," "[t]he 'urgent and compelling circumstances' that FEMA asserts here are attributable, in whole or in part, to FEMA's lack of 'advance planning,'" "FEMA failed to publicize this requirement, and thus failed to consider the proposals it would have received if it had publicized it," "FEMA failed to conduct the required 'market survey,' and failed to heed the existing information that it had from pending proposals under the Solicitation and from prior market research," "FEMA's determination that the pricing of the Sole-Source Contract is 'fair and reasonable' is arbitrary and capricious because it did not consider AGMA's proposed price, which is 20% less," and "[t]he Sole-Source Contract's 150-day period of performance exceeds the 'time necessary.'" (quoting 41 U.S.C. § 3304) (footnote omitted).

Protestor has consistently contended that "AGMA is ready, willing and able to perform this requirement, under either the AGMA contract award or under a new award, for substantially less than the posted award price to Ranger. FEMA's failure to do so is irreparably injuring AGMA." AGMA argues that for injunctive relief, "the situation with regard to enjoining the sole-source bridge contract award is not materially different from the situation regarding enjoining the previous contract award to Ranger," and just as AGMA met the requirements for injunctive relief in Case No. 20-926C, AGMA contends it meets the requirements in the above captioned protest.

In their cross-motions for judgment on the Administrative Record, defendant and intervenor argue that an injunction in this protest would leave "FEMA facilities in Puerto Rico without armed security services." Defendant also argues that "[t]he contracting officer's decision to award a short term bridge contract to Ranger was reasonable and supported by record evidence." Intervenor argues that **"**AGMA cannot demonstrate success on the merits," and claims that "FEMA's planning was adequate and reasonable under the circumstances. Much of any delay is attributable to AGMA." For AMGA's argument regarding the requirement to publish notice of the requirement, intervenor argues

> [g]iven the urgency, FEMA had no intention to solicit proposals from any contractor other than Ranger, consistent with 41 U.S.C. § 1901. Accordingly, no notice was "required" under 41 U.S.C. § 3304(e)(1)(C). Even if FEMA somehow violated 41 U.S.C. § 3304(e)(1)(C) by failing to provide notice, AGMA cannot demonstrate prejudice. As stated, FEMA had no intention of seeking proposals from contractors other than Ranger.

Intervenor also argues, "[c]ontrary to AGMA's assertions FEMA was not required to conduct new market research for the short-term bridge contract because the agency had

recent market research data from November 15, 2019." (internal citation omitted). Defendant also argues that AGMA is "not entitled to permanent injunctive relief," because "AGMA fails to identify any irreparable harm it will suffer as a result of FEMA's actions and the balance of the harms favors the United States."

In response, protestor argues that an injunction did not leave FEMA facilities in Puerto Rico without armed security services "the first time the Court enjoined Ranger's contract, and it wouldn't happen the second time, either. There is no basis in the record for the Defendant to argue that it is simply incapable of awarding a contract to meet this requirement that complies with procurement law." On February 12, 2021, the court held oral argument on the cross-motions for judgment on the Administrative Record.

## DISCUSSION

Rule 52.1(c)(1) (2020) of the Rules of the United States Court of Federal Claims (RCFC) governs motions for judgment on the administrative record. The court's inquiry is directed to "'whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record.'" Mgmt. & Training Corp. v. United States, 115 Fed. Cl. 26, 40 (2014) (quoting A & D Fire Prot., Inc. v. United States, 72 Fed. Cl. 126, 131 (2006); see also Superior Optical Labs, Inc. v. United States, 150 Fed. Cl. 681, 691 (2020) (citing Bannum, Inc. v. United States, 404 F.3d 1346, 1356-57 (Fed. Cir. 2005)); AAR Manufacturing, Inc. v. United States, 149 Fed. Cl. 514, 522 (2020); Glocoms, Inc. v. United States, 149 Fed. Cl. 725, 731 (2020); Centerra Grp., LLC v. United States, 138 Fed. Cl. 407, 412 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1356-57); Informatics Applications Grp., Inc. v. United States, 132 Fed. Cl. 519, 524 (2017) (citation omitted); Strategic Bus. Sols., Inc. v. United States, 129 Fed. Cl. 621, 627 (2016), aff'd, 711 F. App'x 651 (Fed. Cir. 2018); Pursuant to RCFC 52.1, in a bid protest, the court reviews the agency's procurement decision to determine whether it is supported by the administrative record. See CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. 462, 481 (2013); see also CR/ZWS LLC v. United States, 138 Fed. Cl. 212, 223 (2018) (citing Bannum, Inc. v. United States, 404 F.3d at 1353-54).

The Administrative Dispute Resolution Act of 1996 (ADRA), Pub. L. No. 104-320, §§ 12(a), 12(b), 110 Stat. 3870, 3874 (1996) (codified at 28 U.S.C. § 1491(b)(1)–(4)), amended the Tucker Act to establish a statutory basis for bid protests in the United States Court of Federal Claims. See Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1330-32 (Fed. Cir. 2001); see also Sys. Application & Techs., Inc. v. United States, 691 F.3d 1374, 1380 (Fed. Cir. 2012) (explaining that the Tucker Act expressly waives sovereign immunity for claims against the United States in bid protests). The statute provides that protests of agency procurement decisions are to be reviewed under APA standards, making applicable the standards outlined in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), and the line of cases following that decision. See, e.g., Per Aarsleff A/S v. United States, 829 F.3d 1303, 1309 (Fed. Cir. 2016) ("Protests of agency procurement decisions are reviewed under the standards set forth in the Administrative Procedure Act ('APA'), see 28 U.S.C. § 1491(b)(4) (citing 5 U.S.C. § 706), 'by which an agency's decision is to be set aside only if it is arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law[.]'" (quoting NVT Techs., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004)) (citing PAI Corp. v. United States, 614 F.3d 1347, 1351 (Fed. Cir. 2010))); Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332; Res. Conservation Grp., LLC v. United States, 597 F.3d 1238, 1242 (Fed. Cir. 2010) ("Following passage of the APA in 1946, the District of Columbia Circuit in Scanwell Labs., Inc. v. Shaffer, 424 F.2d 859 (D.C. Cir. 1970), held that challenges to awards of government contracts were reviewable in federal district courts pursuant to the judicial review provisions of the APA."); Galen Med. Assocs., Inc. v. United States, 369 F.3d 1324, 1329 (Fed. Cir.) (citing Scanwell Labs., Inc. v. Shaffer, 424 F.2d at 864, 868, for its "reasoning that suits challenging the award process are in the public interest and disappointed bidders are the parties with an incentive to enforce the law"), reh'g denied (Fed. Cir. 2004). In Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345 (Fed. Cir. 2004), the Federal Circuit explained that "[u]nder the APA standard as applied in the Scanwell line of cases, and now in ADRA cases, 'a bid award may be set aside if either (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" Id. at 1351 (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332)); see also Palantir USG, Inc. v. United States, 904 F.3d 980, 990 (Fed. Cir. 2018); AgustaWestland North Am., Inc. v. United States, 880 F.3d 1326, 1332 (Fed. Cir. 2018); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319.

When discussing the appropriate standard of review for bid protest cases, the United States Court of Appeals for the Federal Circuit addressed subsections (2)(A) and (2)(D) of 5 U.S.C. § 706, see Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332 n.5, but focused its attention primarily on subsection (2)(A). See Croman Corp. v. United States, 724 F.3d 1357, 1363 (Fed. Cir.) ("'[T]he proper standard to be applied [to the merits of] bid protest cases is provided by 5 U.S.C. § 706(2)(A) [(2006)]: a reviewing court shall set aside the agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (alterations in original) (quoting Banknote Corp. of Am. v. United States, 365 F.3d at 1350-51 (citing Advanced Data Concepts, Inc. v. United States, 216 F.3d 1054, 1057-58 (Fed. Cir.), reh'g denied (Fed. Cir. 2000)))), reh'g and reh'g en banc denied (Fed. Cir. 2013). The statute says that agency procurement actions should be set aside when they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)(A), (D) (2018);[7] see also Veterans

---

[7] The language of 5 U.S.C. § 706 provides in full:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

Contracting Grp., Inc. v. United States, 920 F.3d 801, 806 (Fed. Cir. 2019) ("In a bid protest, we follow Administrative Procedure Act § 706 and set aside agency action 'if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting Palladian Partners, Inc. v. United States, 783 F.3d 1243, 1252 (Fed. Cir. 2015)); Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d 1353, 1358 (Fed. Cir. 2015); Orion Tech., Inc. v. United States, 704 F.3d 1344, 1347 (Fed. Cir. 2013); COMINT Sys. Corp. v. United States, 700 F.3d 1377, 1381 (Fed. Cir. 2012) ("We evaluate agency actions according to the standards set forth in the Administrative Procedure Act; namely, for whether they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" (quoting 5 U.S.C. § 706(2)(A); and Bannum, Inc. v. United States, 404 F.3d at 1351)); Savantage Fin. Servs. Inc., v. United States, 595 F.3d 1282, 1285-86 (Fed. Cir. 2010); Weeks Marine, Inc. v. United States, 575 F.3d 1352, 1358 (Fed. Cir. 2009); Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381 (noting arbitrary and capricious standard set forth in 5 U.S.C. § 706(2)(A), and reaffirming the analysis of Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332); Blue & Gold Fleet, L.P. v. United States, 492 F.3d 1308, 1312 (Fed. Cir. 2007) ("'[T]he inquiry is whether the [government]'s procurement decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."'" (quoting Bannum, Inc. v. United States, 404 F.3d at 1351 (quoting 5 U.S.C. § 706(2)(A) (2000)))); NVT Techs., Inc. v. United States, 370 F.3d at 1159 ("Bid protest actions are subject to the standard of review established under section 706 of title 5 of the Administrative Procedure Act ('APA'), 28 U.S.C. § 1491(b)(4) (2000), by which an agency's decision is to be set aside only if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,' 5 U.S.C. § 706(2)(A) (2000)." (internal citations omitted)); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319 ("Consequently, our inquiry is whether the Air Force's procurement decision was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.' 5 U.S.C. § 706(2)(A) (2000)."); Synergy Sols., Inc. v. United States, 133 Fed. Cl. 716, 734 (2017) (citing Banknote Corp. of Am. v. United States, 365 F.3d at 1350); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. at 22; Contracting,

---

    (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (B) contrary to constitutional right, power, privilege, or immunity;

    (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

    (D) without observance of procedure required by law;

    (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

    (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

5 U.S.C. § 706.

Consulting, Eng'g LLC v. United States, 104 Fed. Cl. 334, 340 (2012). "In a bid protest case, the agency's award must be upheld unless it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" Turner Constr. Co. v. United States, 645 F.3d 1377, 1383 (Fed. Cir.) (quoting PAI Corp. v. United States, 614 F.3d at 1351), reh'g en banc denied (Fed. Cir. 2011); see also Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358 ("In applying this [arbitrary and capricious] standard to bid protests, our task is to determine whether the procurement official's decision lacked a rational basis or the procurement procedure involved a violation of a regulation or procedure." (citing Savantage Fin. Servs., Inc. v. United States, 595 F.3d at 1285-86)); Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d 901, 907 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2013); McVey Co., Inc. v. United States, 111 Fed. Cl. 387, 402 (2013) ("The first step is to demonstrate error, that is, to show that the agency acted in an arbitrary and capricious manner, without a rational basis or contrary to law."); PlanetSpace, Inc. v. United States, 92 Fed. Cl. 520, 531-32 ("Stated another way, a plaintiff must show that the agency's decision either lacked a rational basis or was contrary to law." (citing Weeks Marine, Inc. v. United States, 575 F.3d at 1358)), subsequent determination, 96 Fed. Cl. 119 (2010).

The United States Supreme Court has identified standards by which grounds which arbitrary or capricious agency action can be judged:

> [W]e will not vacate an agency's decision unless it "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Nat'l Ass'n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 658 (2007) (quoting Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983)); see also F.C.C. v. Fox Television Stations, Inc., 556 U.S. 502, 552 (2009); Tinton Falls Lodging Realty, LLC v. United States, 800 F.3d at 1358; Ala. Aircraft Indus., Inc.-Birmingham v. United States, 586 F.3d 1372, 1375 (Fed. Cir. 2009), reh'g and reh'g en banc denied (Fed. Cir. 2010); In re Sang Su Lee, 277 F.3d 1338, 1342 (Fed. Cir. 2002) ("[T]he agency tribunal must present a full and reasoned explanation of its decision. . . . The reviewing court is thus enabled to perform meaningful review . . . ."); Textron, Inc. v. United States, 74 Fed. Cl. 277, 285-86 (2006), appeal dismissed sub nom. Textron, Inc. v. Ocean Technical Servs., Inc., 223 F. App'x 974 (Fed. Cir. 2007). The United States Supreme Court also has cautioned, however, that "courts are not free to impose upon agencies specific procedural requirements that have no basis in the APA." Pension Benefit Guar. Corp. v. LTV Corp., 496 U.S. 633, 654 (1990).

Under an arbitrary or capricious standard, the reviewing court should not substitute its judgment for that of the agency, but should review the basis for the agency decision to determine if it was legally permissible, reasonable, and supported by the facts. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43 ("The scope of

review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."); see also Dell Fed. Sys., L.P. v. United States, 906 F.3d 982, 990 (Fed. Cir. 2018); Turner Constr. Co., Inc. v. United States, 645 F.3d at 1383; R & W Flammann GmbH v. United States, 339 F.3d 1320, 1322 (Fed. Cir. 2003) (citing Ray v. Lehman, 55 F.3d 606, 608 (Fed. Cir.), cert. denied, 516 U.S. 916 (1995)); Synergy Sols., Inc. v. United States, 133 Fed. Cl. at 735 (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33). """If the court finds a reasonable basis for the agency's action, the court should stay its hand even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations."'" Weeks Marine, Inc. v. United States, 575 F.3d at 1371 (quoting Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971))); Limco Airepair, Inc. v. United States, 130 Fed. Cl. 544, 550 (2017) (citation omitted); Jordan Pond Co., LLC v. United States, 115 Fed. Cl. 623, 631 (2014); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. 342, 349 (2013); Norsat Int'l [America], Inc. v. United States, 111 Fed. Cl. 483, 493 (2013); HP Enter. Servs., LLC v. United States, 104 Fed. Cl. 230, 238 (2012); Vanguard Recovery Assistance v. United States, 101 Fed. Cl. 765, 780 (2011).

Stated otherwise by the United States Supreme Court:

Section 706(2)(A) requires a finding that the actual choice made was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

Citizens to Pres. Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971) (internal citations omitted), abrogated on other grounds by Califano v. Sanders, 430 U.S. 99 (1977); see also U.S. Postal Serv. v. Gregory, 534 U.S. 1, 6-7 (2001); Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 285 (1974), reh'g denied, 420 U.S. 956 (1975); Co-Steel Raritan, Inc. v. Int'l Trade Comm'n, 357 F.3d 1294, 1309 (Fed. Cir. 2004) (In discussing the "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with the law" standard, the Federal Circuit stated: "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."); In re Sang Su Lee, 277 F.3d at 1342; Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058 ("The arbitrary and capricious standard applicable here is highly deferential. This standard requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." (citing Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. at 285)); Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d 955, 959 (Fed. Cir. 1993); ); Sys. Studies & Simulation, Inc. v. United States, 146 Fed. Cl. 186, 199 (2019); By Light Prof'l IT Servs., Inc. v. United States, 131 Fed. Cl. 358, 366 (2017); BCPeabody Constr. Servs., Inc. v. United States, 112 Fed. Cl. 502, 508 (2013) ("The court 'is not empowered to substitute its judgment for

that of the agency,' and it must uphold an agency's decision against a challenge if the 'contracting agency provided a coherent and reasonable explanation of its exercise of discretion.'" (internal citations omitted) (quoting Keeton Corrs., Inc. v. United States, 59 Fed. Cl. 753, 755, recons. denied, 60 Fed. Cl. 251 (2004); and Axiom Res. Mgmt., Inc. v. United States, 564 F.3d at 1381)), appeal dismissed, 559 F. App'x 1033 (Fed. Cir. 2014); Supreme Foodservice GmbH v. United States, 109 Fed. Cl. at 382; Alamo Travel Grp., LP v. United States, 108 Fed. Cl. 224, 231 (2012); ManTech Telecomms. & Info. Sys. Corp. v. United States, 49 Fed. Cl. 57, 63 (2001), aff'd, 30 F. App'x 995 (Fed. Cir. 2002).

According to the United States Court of Appeals for the Federal Circuit:

Effective contracting demands broad discretion. Burroughs Corp. v. United States, 223 Ct. Cl. 53, 617 F.2d 590, 598 (1980); Sperry Flight Sys. Div. v. United States, 548 F.2d 915, 921, 212 Ct. Cl. 329 (1977); see NKF Eng'g, Inc. v. United States, 805 F.2d 372, 377 (Fed. Cir. 1986); Tidewater Management Servs., Inc. v. United States, 573 F.2d 65, 73, 216 Ct. Cl. 69 (1978); RADVA Corp. v. United States, 17 Cl. Ct. 812, 819 (1989), aff'd, 914 F.2d 271 (Fed. Cir. 1990). Accordingly, agencies "are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government." Tidewater Management Servs., 573 F.2d at 73, 216 Ct. Cl. 69.

Lockheed Missiles & Space Co. v. Bentsen, 4 F.3d at 958-59; see also Res-Care, Inc. v. United States, 735 F.3d 1384, 1390 (Fed. Cir.) ("DOL [Department of Labor], as a federal procurement entity, has 'broad discretion to determine what particular method of procurement will be in the best interests of the United States in a particular situation.'" (quoting Tyler Constr. Grp. v. United States, 570 F.3d 1329, 1334 (Fed. Cir. 2009))), reh'g en banc denied (Fed. Cir. 2014); Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 995 (Fed. Cir. 1996); Geo-Med, LLC v. United States, 126 Fed. Cl. 440, 449 (2016); Cybertech Grp., Inc. v. United States, 48 Fed. Cl. 638, 646 (2001) ("The court recognizes that the agency possesses wide discretion in the application of procurement regulations."); Furthermore, according to the United States Court of Appeals for the Federal Circuit:

Contracting officers "are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process." Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001) (internal quotation marks omitted). Accordingly, procurement decisions are subject to a "highly deferential rational basis review." CHE Consulting, Inc. v. United States, 552 F.3d 1351, 1354 (Fed. Cir. 2008) (internal quotation marks omitted).

PAI Corp. v. United States, 614 F.3d at 1351; see also AgustaWestland N. Am., Inc. v. United States, 880 F.3d at 1332 ("Where, as here, a bid protester challenges the procurement official's decision as lacking a rational basis, we must determine whether 'the contracting agency provided a coherent and reasonable explanation of its exercise of discretion,' recognizing that 'contracting officers are entitled to exercise discretion upon

a broad range of issues confronting them in the procurement process.'" (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33 (internal quotation marks and citation omitted))); Weeks Marine, Inc. v. United States, 575 F.3d at 1368-69 ("We have stated that procurement decisions 'invoke [ ] "highly deferential" rational basis review.' Under that standard, we sustain an agency action 'evincing rational reasoning and consideration of relevant factors.'" (alteration in original) (quoting CHE Consulting, Inc. v. United States, 552 F.3d at 1354 (quoting Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1058))).

"Contracting officers 'are entitled to exercise discretion upon a broad range of issues confronting them in the procurement process,'" PAI Corp. v. United States, 614 F.3d at 1351 (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332), and "[a]ccordingly, procurement decisions are subject to a 'highly deferential rational basis review.'" Id. (quoting CHE Consulting, Inc. v. United States, 552 F.3d at 1354 (Fed. Cir. 2008) (internal quotation marks omitted)). As recently explained by a Judge of the United States Court of Federal Claims, "'[i]dentical review standards apply under the APA in the context of a sole-source award.'" Utech Prod. v. United States, 148 Fed. Cl. 542, 549 (2020) (quoting Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071, 1086 (Fed. Cir. 2001)).

A disappointed bidder has the burden of demonstrating the arbitrary and capricious nature of the agency decision by a preponderance of the evidence. See Tinton Fall Lodging Realty, LLC v. United States, 800 F.3d at 1364; see also Grumman Data Sys. Corp. v. Dalton, 88 F.3d at 995-96; Enhanced Veterans Sols., Inc. v. United States, 131 Fed. Cl. 565, 578 (2017); Davis Boat Works, Inc. v. United States, 111 Fed. Cl. at 349; Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. at 340. The Federal Circuit has indicated that "[t]his court will not overturn a contracting officer's determination unless it is arbitrary, capricious, or otherwise contrary to law. To demonstrate that such a determination is arbitrary or capricious, a protester must identify 'hard facts'; a mere inference or suspicion . . . is not enough." PAI Corp. v. United States, 614 F.3d at 1352 (citing John C. Grimberg Co. v. United States, 185 F.3d 1297, 1300 (Fed. Cir. 1999)); see also Turner Constr. Co., Inc. v. United States, 645 F.3d at 1387; Sierra Nevada Corp. v. United States, 107 Fed. Cl. 735, 759 (2012); Filtration Dev. Co., LLC v. United States, 60 Fed. Cl. 371, 380 (2004).

A bid protest proceeds in two steps. First . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract. Second . . . if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct.

Bannum, Inc. v. United States, 404 F.3d at 1351; T Square Logistics Servs. Corp. v. United States, 134 Fed. Cl. 550, 555 (2017); FirstLine Transp. Sec., Inc. v. United States, 119 Fed. Cl. 116, 126 (2014), appeal dismissed (Fed. Cir. 2015); Eco Tour Adventures, Inc. v. United States, 114 Fed. Cl. at 22; Archura LLC v. United States, 112 Fed. Cl. at

496. To prevail in a bid protest case, the protestor not only must show that the government's actions were arbitrary, capricious, or otherwise not in accordance with the law, but the protestor also must show that it was prejudiced by the government's actions. See 5 U.S.C. § 706 ("[D]ue account shall be taken of the rule of prejudicial error."); see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 907 ("In a bid protest case, the inquiry is whether the agency's action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law and, if so, whether the error is prejudicial."); IT Enter. Sols. JV, LLC v. United States, 132 Fed. Cl. 158, 173 (2017) (citing Bannum v. United States, 404 F.3d at 1357-58); Linc Gov't Servs., LLC v. United States, 96 Fed. Cl. 672, 694-96 (2010). In describing the prejudice requirement, the Federal Circuit also has held that:

> To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process. See Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." Data General, 78 F.3d at 1562 (citation omitted). Rather, the protester must show "that there was a substantial chance it would have received the contract award but for that error." Statistica, 102 F.3d at 1582; see CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983) (to establish competitive prejudice, protester must demonstrate that but for the alleged error, "'there was a substantial chance that [it] would receive an award--that it was within the zone of active consideration.'" (citation omitted)).

Alfa Laval Separation, Inc. v. United States, 175 F.3d 1365, 1367 (Fed. Cir.), reh'g denied (Fed. Cir. 1999); see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 912; Allied Tech. Grp., Inc. v. United States, 649 F.3d 1320, 1326 (Fed. Cir.), reh'g en banc denied (Fed. Cir. 2011); Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319; Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1332-33; OMV Med., Inc. v. United States, 219 F.3d 1337, 1342 (Fed. Cir. 2000); Advanced Data Concepts, Inc. v. United States, 216 F.3d at 1057; Stratos Mobile Networks USA, LLC v. United States, 213 F.3d 1375, 1380 (Fed. Cir. 2000).

> As explained by the United States Court of Appeals for the Federal Circuit

> a sole-source award may be set aside if either: (1) the sole-source award lacked a rational basis; or (2) the sole-source procurement procedure involved a violation of a statute, regulation, or procedure. Under the first ground, the party challenging the sole-source award bears a heavy burden of showing that the award decision had no rational basis. To meet this burden, a disappointed party can show: (1) the agency's decision to conduct a sole-source procurement process lacked a rational basis; (2) the agency's sole-source requirements lacked a rational basis; or (3) based on the sole-source requirements, the selection of the sole-source awardee lacked a

rational basis. The test for reviewing courts is to determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion.

Emery Worldwide Airlines, Inc. v. United States, 264 F.3d at 1086 (citations omitted); see also Utech Prod. v. United States, 148 Fed. Cl. at 549.

The section "Use of noncompetitive procedures," at 41 U.S.C. § 3304 (2018) indicates:

> **(a) When noncompetitive procedures may be used.**--An executive agency may use procedures other than competitive procedures only when-
> **(1)** the property or services needed by the executive agency are available from only one responsible source and no other type of property or services will satisfy the needs of the executive agency;
> **(2)** the executive agency's need for the property or services is of such an unusual and compelling urgency that the Federal Government would be seriously injured unless the executive agency is permitted to limit the number of sources from which it solicits bids or proposals;
>
> . . .
>
> **(c) Property or services needed with unusual and compelling urgency.**--
> **(1) Allowable contract period.**--The contract period of a contract described in paragraph (2) that is entered into by an executive agency pursuant to the authority provided under subsection (a)(2)--
> **(A)** may not exceed the time necessary--
> **(i)** to meet the unusual and compelling requirements of the work to be performed under the contract; and
> **(ii)** for the executive agency to enter into another contract for the required goods or services through the use of competitive procedures; and
> **(B)** may not exceed one year unless the head of the executive agency entering into the contract determines that exceptional circumstances apply.
> **(2) Applicability of allowable contract period.**--This subsection applies to any contract in an amount greater than the simplified acquisition threshold.
> **(d) Offer requests to potential sources.**--An executive agency using procedures other than competitive procedures to procure property or services by reason of the application of paragraph (2) or (6) of subsection (a) shall request offers from as many potential sources as is practicable under the circumstances.
> **(e) Justification for use of noncompetitive procedures.**--
> **(1) Prerequisites for awarding contract.**--Except as provided in paragraphs (3) and (4), an executive agency may not award a contract using procedures other than competitive procedures unless--

**(A)** the contracting officer for the contract justifies the use of those procedures in writing and certifies the accuracy and completeness of the justification;

**(B)** the justification is approved, in the case of a contract for an amount--

**(i)** exceeding $500,000 but equal to or less than $10,000,000, by the advocate for competition for the procuring activity (without further delegation) or by an official referred to in clause (ii) or (iii);

**(ii)** exceeding $10,000,000 but equal to or less than $50,000,000, by the head of the procuring activity or by a delegate who, if a member of the armed forces, is a general or flag officer or, if a civilian, is serving in a position in which the individual is entitled to receive the daily equivalent of the maximum annual rate of basic pay payable for level IV of the Executive Schedule (or in a comparable or higher position under another schedule); or

**(iii)** exceeding $50,000,000, by the senior procurement executive of the agency designated pursuant to section 1702(c) of this title (without further delegation); and

**(C)** any required notice has been published with respect to the contract pursuant to section 1708 of this title and the executive agency has considered all bids or proposals received in response to that notice.

**(2) Elements of justification.**--The justification required by paragraph (1)(A) shall include--

**(A)** a description of the agency's needs;

**(B)** an identification of the statutory exception from the requirement to use competitive procedures and a demonstration, based on the proposed contractor's qualifications or the nature of the procurement, of the reasons for using that exception;

**(C)** a determination that the anticipated cost will be fair and reasonable;

**(D)** a description of the market survey conducted or a statement of the reasons a market survey was not conducted;

**(E)** a listing of any sources that expressed in writing an interest in the procurement; and

**(F)** a statement of any actions the agency may take to remove or overcome a barrier to competition before a subsequent procurement for those needs.

41 U.S.C. § 3304 (emphases in original). "The regulations implementing these provisions explain that the exception may be appropriate '[w]hen there is a reasonable basis to conclude that the agency's minimum needs can only be satisfied by[ ] [u]nique supplies or services available from only one source or only one supplier with unique capabilities.'" Utech Prod. v. United States, 148 Fed. Cl. at 548 (quoting " FAR § 6.302-1(b)(1)(i)) (alterations in original).

The court notes that in its motion for judgment on the Administrative Record intervenor argues that

[t]he J&A relies on the statutory authority permitting other than full and open competition, 41 U.S.C. § 1901, as implemented by FAR Subpart 13.501(a), Special documentation requirements, Sole source acquisitions. The statute upon which the agency relies – 41 U.S.C. § 1901 – and the FAR provisions implementing the statute, govern sole source procurements for commercial services using simplified acquisition procedures.

Intervenor then claims that "AGMA errs in asserting the agency relies on 41 U.S.C. § 3304(a)(2), a wholly different statute with different requirements." Although the Justification & Approval refers to 41 U.S.C. § 1901, the court notes that in Ms. Knight's after the fact declaration regarding the sole source process, the contracting officer explained:

The contract team began work on plans for a sole source contract on Monday, January 4, 2021, pursuant to 41 U.S.C. § 3304(a)(2), which permits a sole source award when there is an unusual and compelling urgency and the Government would be seriously injured unless the Agency is permitted to limit the number of sources from which it solicits proposals.

In addition, at the February 12, 2021 oral argument defendant's counsel noted that "41 USC [§] 3304(a)(2), which is the urgent and compelling circumstances [sic], it appears that the parties agree that that is the proper statute that the Court should be assessing this [sole source bridge contract] under."[8] The court agrees that the court must look to 41 U.S.C. § 3304 to determine if the agency acted rationally in justifying the sole source award. In any event, 41 U.S.C. § 1901(e) explicitly refers to 41 U.S.C. § 3304 as a special rule for commercial products or commercial services:

**(e) Special rules for commercial products or commercial services.**-- The Federal Acquisition Regulation shall provide that an executive agency using special simplified procedures to purchase commercial products or commercial services--
**(1)** shall publish a notice in accordance with section 1708 of this title and, as provided in section 1708(c)(4) of this title, permit all responsible sources to submit a bid, proposal, or quotation (as appropriate) that the agency shall consider;

---

[8] Subsequently, intervenor's counsel's clarified

if you look at 1901 and then FAR 13.501, I think that the provisions of 3304(e) do apply, there's some requirements there that do apply, but 3304(a)(2), which is the urgency rules, 3304(d) that talks about requesting offers from as many sources as practicable, that doesn't apply, and 3304(c)(1)(A), which talks -- again, which is a limitation on the time period, that doesn't apply either.

**(2)** may not conduct the purchase on a sole source basis unless the need to do so is justified in writing and approved in accordance with section 2304(f) of title 10 or section 3304(e) of this title, as applicable; and
**(3)** shall include in the contract file a written description of the procedures used in awarding the contract and the number of offers received.

41 U.S.C. § 1901(e) (2018) (emphasis in original).[9]

Turning to 41 U.S.C. § 3304(a), the statute requires that FEMA "may use procedures other than competitive procedures only when (1) the property or services needed by the executive agency are available from only one responsible source and no other type of property or services will satisfy the needs of the executive agency;" and "(2) the executive agency's need for the property or services is of such an unusual and compelling urgency that the Federal Government would be seriously injured unless the executive agency is permitted to limit the number of sources from which it solicits bids or proposals." Id.

Defendant claims that

[o]n the basis that it was "urgent and compelling" to issue a sole-source bridge contract, the agency explained that it was not practicable under the circumstances to ask other offerors for proposals (including AGMA), because the truncated transition time created an unacceptable level of risk that there would not be a smooth transition and that the agency would be left without services for a period of time after January 8.

Additionally, defendant argues that "FEMA complied with the statutory requirements in issuing the contract on the basis of 'unusual and compelling urgency,' 41 U.S.C. § 3304(a)(2), when, in the J&A Memorandum, it adequately and rationally explained all of the required elements of justification." Intervenor argues that "[f]aced with an urgent requirement, FEMA reasonably issued a short-term bridge contract to meet its minimum needs in the abbreviated period between the Court's December 29, 2020 decision and the new, competitive procurement for a long-term contract." AGMA responds that on "its face, however, that exception is not properly applicable here, because the Government would not be 'seriously injured' by seeking and entertaining a proposal from AGMA (or others). Therefore, a sole-source award is prohibited."

The court notes that the only explanation for urgency in the sole source bridge contract award was the timing when the agency's improper award to Ranger American of Puerto Rico was to be enjoined. The Sole Source Justification & Approval explained:

***6.* Demonstration that the proposed contractor's unique qualifications or the nature of the acquisition requires use of the authority cited**. *This paragraph is one of the most important parts of the J&A [Justification &*

---

[9] In addition, 41 U.S.C. § 1901(c) requires "the head of an executive agency shall promote competition to the maximum extent practicable." Id.

*Approval] and should clearly identify why the proposed action must be accomplished through other than full and open competition. Provide a well-reasoned, detailed discussion of the issue that will make it clear to someone who is unfamiliar with your organization or your requirement why full and open competition cannot be used for this procurement. The following information must be included:*

The proposed contractor, Ranger, is currently performing the services required effectively and satisfactorily under contract 70FBR220C00000019. Given the short timeline at issue, a transition to another contractor would introduce unnecessary risks and uncertainties that would be detrimental to the interests of the government.

(a) Rationale for using the authority cited in section 4 of the J&A;

Due to the Court of Federal Claims (COFC) ruling in response to the protest submitted by the contractor AGMA against the award of the existing FEMA contract with the contractor Ranger, the use of other than full and open competition is required to award a short-term Firm Fixed Price, Labor Hour (FFP, LH) bridge contract in order to provide continued Armed Security Guard Services in support of the FEMA's Recovery mission, Disaster (DR)-4339-Puerto Rico (PR). The ruling enjoins FEMA from continuing the performance of the contract currently in place to provide these services as of January 8, 2021. The ruling states that AGMA "has been deprived the opportunity to compete fairly for a contract." In order to correct this harm, a new contract under a full and open competition procedure will be awarded. However, continued services are required to maintain the safety, security and health of the current federal employees, visitors and property at all existing temporary and fixed facilities currently being occupied in response to DR-4339-PR. Based on the COFC ruling, a nine-day[10] acquisition timeline to solicit and award a new contract under full and open competition procedures is unattainable.

(b) Details covering what events lead to the situation requiring use of other than full and open competition procedures including whether any portion of the work can be segregated to allow for competition;

On December 30, 2020, the FEMA received notification of the COFC ruling in response to the protest submitted by AGMA against the award of contract 70FBR220C00000019 to Ranger in response to solicitation 70FBR220R00000002. The ruling required the FEMA end the current contract awarded to Ranger by January 8, 2021. Therefore, due to extraordinary limitation in acquisition lead time, there is not any portion of the work that can be segregated to allow for competition. However, this

---

[10] The court notes there were ten days, not nine, from the December 29, 2020 Opinion and the January 8, 2021 injunction.

short-term contract is being sought to allow adequate acquisition lead time to solicit an award under full and open competition procedures with limitations to local area set aside under the Stafford Act.

(c) Summarize alternatives considered and why they will not work; and

Due to the acquisition lead time limitation, the only other alternative considered was to award a short-term sole source contract to AGMA. However, it was considered in the best interest of the FEMA to award a short-term contract to the existing contractor, Ranger, since the contractor was already in place effectively and satisfactorily performing. Moreover, the lack of adequate time to both award to AGMA and transition from Ranger poses substantial risk to continuity of operations; therefore, increasing risk to safety, security and health of the current federal employees, visitors and property at all existing temporary and fixed facilities currently being occupied in response to DR-4339-PR. The risk is viewed as detrimental to the interests of the government. Because the current Ranger contract must be terminated and the previous AGMA contract was terminated, there is no existing vehicle by which the FEMA can obtain these services and no legal method by which the Agency could reinstate either contract.

(d) Impact to the mission that would result if the J&A is not approved and, consequently, the product or service not provided.

See Section b above.

(capitalization and emphasis in original).

Rather than taking any responsibility for the agency's improper actions, the premise of the defendant's cross-motion for judgment on the Administrative Record is that the urgency for the sole source bridge contract award was caused by the timing of the December 29, 2020 decision. Once the court concluded, however, that the agency had acted unreasonably and improperly, the issue became, given the lengthy history of the procurement at the GAO and at the court, should the agency not have been planning for all eventualities, including a possible sole source procurement, especially given the discussions with the parties and concerns raised by the court at the various hearings, including oral argument, suggesting serious concerns regarding the previous procurement protested by AGMA. Defendant argues that "[a]fter the Court entered judgment in *AGMA I* on December 29, 2020, FEMA had six business (nine calendar) days to get another contract vehicle in place to provide the armed security services by January 8, 2021." (emphasis and capitalization in original). Likewise, intervenor argues,"[w]ith only nine calendar days between the Court's December 29, 2020 decision and the requirement to stop performance of Ranger's existing contract, FEMA reasonably issued a short-term bridge contract to meet its minimum needs." At the oral argument, defendant's counsel argued that

as much as leave is not an excuse, it was the end of the year, December 30th, 31st, and the next day was a federal holiday, and so things actually moved, I think, really quickly in the time that the agency had. And so, then, everybody comes back to work on Monday, January 4th, and started to -- okay, now they have made the decision there is going to be a new solicitation[.]

The court believes the limited amount of time between the date of the decision and the injunctive effective date cannot be the only reason for the sole source to be released in the way it was issued. The court notes if the agency was that concerned, FEMA could have requested the Department of Justice file a motion to stay the injunction to allow FEMA to issue a negotiated bridge contract. Moreover, the agency could have and should have prepared for a possible negative result in Case No. 20-926C, given the discussions at the various hearings with the parties and the court after the protest was filed and been in a better position to move forward appropriately. The agency claimed, "[b]ased on the COFC ruling, a nine-day acquisition timeline to solicit and award a new contract under full and open competition procedures is unattainable," indicating the first efforts to address the previously identified issues were not made until after the December 29, 2020 Opinion was issued. The court notes that the sole source bridge contract award was for awarded 150 days, although the term of the contract was shortened to 60 days, with three 30 day options for a possible total of 150 days periods. Neither version of the sole source bridge contract allowed for the opportunity by AGMA to submit an offer, which correctly or not, believed it could perform the requirement.

Furthermore, the Sole Source Justification & Approval was not fully developed and explained, as defendant's counsel as much as admitted at the February 12, 2021 oral argument. At the oral argument defendant's counsel stated given her position as an officer of the court, and with a duty of candor, that the sole source Justification & Approval "might be thin." Defendant's counsel argued, however, that the justification "might be rational enough and it might be -- and it is rational, and it is according to the law." Although an advocate for her client, every attorney appearing in court has a duty, based on his or her bar license to not mislead the court. In the above captioned protest, defendant's counsel, given the difficult facts presented, very ably advocated for her client.

Specifically, the Sole Source Justification & Approval's rationale for the sole source comes almost entirely from paragraph 6 above, and focuses on the urgency of a quick award, rather than the merits of why the sole source decision was proper. As noted above, AGMA argues that in order to rely on urgency, pursuant to 41 U.S.C. § 3304(a), "the executive agency's need for the property or services is of such an unusual and compelling urgency that the Federal Government would be seriously injured unless the executive agency is permitted to limit the number of sources from which it solicits bids or proposals." Id. FEMA, however, provided no explanation why it would be "seriously injured" to have received a proposal from AGMA and AGMA had independently contacted the agency and represented that it was ready to perform. The Sole Source Justification & Approval only states:

> Due to the acquisition lead time limitation, the only other alternative considered was to award a short-term sole source contract to AGMA. However, it was considered in the <u>best interest of the FEMA</u> to award a short-term contract to the existing contractor, Ranger, since the contractor was already in place effectively and satisfactorily performing. Moreover, the lack of adequate time to both award to AGMA and transition from Ranger poses substantial risk to continuity of operations; therefore, increasing risk to safety, security and health of the current federal employees, visitors and property at all existing temporary and fixed facilities currently being occupied in response to DR-4339-PR.

(emphasis added). There is no explanation for the FEMA to rely on the "best interest of the FEMA" to justify the sole source award, and notably, neither defendant nor intervenor attempt to defend or even explain the "best interest" standard in addition to the safety concerns expressed. The fact that Ranger American of Puerto Rico was "already in place effectively and satisfactorily performing" cannot alone justify not even considering a proposal from AGMA. Although the post sole source decision declaration of the contracting officer Ms. Knight is more descriptive, even the declaration, prepared after the above captioned bid protest was filed, does not offer a sufficient explanation for why AMGA was not given an opportunity to submit a proposal as offered by AGMA, a previous awardee for the same services. Whether or not AGMA's proposal would have been accepted is quite another question. As noted above, Ms. Knight's declaration stated:

> Even if the approval process could be expedited for AGMA employees that had previously been approved, we determined that this still would not be sufficient. OCSO had previously vetted 137 AGMA employees, who remained active until July 2020. The work is currently being performed by at least 190 Ranger employees. Even if that reduced number of AGMA employees could have been sufficient, the following would have been required to ensure that the 137 employees would be in place by midnight on January 7: (1) ascertainment and confirmation within 24 hours (January 4-5) that all 137 of those employees identified six months ago are still available; and (2) completion of the OSCO approval process within 48 hours (January 5-7), rather than the standard two weeks in order to have those employees in place by midnight on January 7. Although it is technically possible that these requirements could have been fulfilled, it created an unacceptable risk that there would be a lapse of services during the transition.

> Although AGMA (or any other number of offerors) may have been capable of performing the contract, the truncated transition time created an unacceptable level of risk that there could not be a smooth transition and that the Agency would be left without services for a period of time after January 8. Even if a contractor like AGMA could move quickly, the two-week OCSO approval process would be extremely problematic. For example, if AGMA had given the Agency a list of employees on January 5, it likely would

have taken OCSO until at least January 18 (or possibly longer) to vet and approve the available employees. And the only representation we had from AGMA's attorney was that his client was "ready, willing, and able" to perform, but he did not include any other information or documents that actually indicated a certainty that his client could perform, such as providing a list of available employees or showing any affirmative steps that his client had taken to expedite the transition process. Thus, we determined that it was not practicable to seek proposals from anyone other than the incumbent.

(capitalization in original). Ms. Knight concluded:

Even with a longer transition period from the Court's enjoining of Ranger's continued performance of the Ranger Contract to award of the bridge contract, rather than the six business (nine calendar) days permitted, FEMA likely would have still awarded the bridge contract to the incumbent, Ranger, regardless of whether it had received a lower-priced proposal from another contractor, like AGMA. The incumbent was performing the services required effectively and satisfactorily and any transition creates risk of catastrophic consequences for the entire Puerto Rico recovery effort. FEMA must balance this risk with the need for full and open competition in the procurement process. Because this is a short-term bridge contract that is only intended to allow for a full and open competition for a longer-term award, the Government in this situation is best served by avoiding the unnecessary risk of an additional transition and providing a full and open competition for all contractors to compete for the longer-term contract as soon as possible.

The court notes that Ms. Knight's after the fact declaration falls back on the same arguments as the Sole Source Justification & Approval, specifically the limited amount of time between the court's decision and the injunction becoming effective, and that Ranger American of Puerto Rico was in already in place in Puerto Rico.

Furthermore, 41 U.S.C. § 3304(c) states:

**Property or services needed with unusual and compelling urgency.**--
**(1) Allowable contract period.**--The contract period of a contract described in paragraph (2) that is entered into by an executive agency pursuant to the authority provided under subsection (a)(2)--
**(A)** may not exceed the time necessary--
**(i)** to meet the unusual and compelling requirements of the work to be performed under the contract; and
**(ii)** for the executive agency to enter into another contract for the required goods or services through the use of competitive procedures; and
**(B)** may not exceed one year unless the head of the executive agency entering into the contract determines that exceptional circumstances apply.

Id. (capitalization and emphasis in original). The FAR at 3006.302-270 (2020) provides that:

> For contract awards to facilitate the response to or recovery from a natural disaster, act of terrorism, or other man-made disaster, that relies on this exception, the period of performance shall be limited to the minimum period necessary to meet the urgent and compelling requirements of the work to be performed and to enter into another contract for the required goods or services through the use of competitive procedures, but in no event shall the period of performance exceed 150 days, unless the Head of the Contracting Activity (or higher approval authority if required by (FAR) 48 CFR 6.304 or DHS procedures) determines that exceptional circumstances apply, approving the justification as set forth in (HSAR) 48 CFR 3006.304.

FAR 3006.302-270. The Sole Source Justification & Approval at paragraph 3 indicates:

> The requirement is to provide continued Armed Security Guard Services through the provision of Protective Service Officers (PSOs). The contractor shall perform duties/tasks necessary to provide PSOs for physical security services throughout the entire island of Puerto Rico including municipalities of Vieques and Culebra. Patrol vehicles shall be provided, when required by FEMA, based on location characteristics, vulnerabilities and risks. The period of performance will be 150 calendar days.

Although the period of performance in the Sole Source Justification & Approval states the period of performance is 150 days, in a footnote to the defendant's cross-motion for judgment on the Administrative Record, defendant states that "[t]he original term of the bridge contract was for 150 days, until June 7, 2021. A bilateral modification of the bridge contract, attached to this motion, was issued on January 21, 2021, which shortened the term to 60 days, or until March 7, 2021." (internal references omitted). Although framed in defendant's brief as an effort to "further the goal of a speedy transition to the new solicitation," this change suggests that the original time frame in the Sole Source Justification & Approval was unnecessarily long and, therefore, exceeded the time necessary "to meet the unusual and compelling requirements of the work to be performed under the contract." 41 U.S.C. § 3304(c). The Sole Source Justification & Approval gives no indication why the period of 150 days was chosen (although the court notes that the maximum period in FAR 3006.302-270, unless the Head of Contracting approved of a longer time than the 150 days), and the government provides no indication as to why the period of performance could be more than cut in half only ten days after the Sole Source Justification & Approval was signed. Moreover, as noted above, although the term of the contract was shorted to 60 days, the bilateral modification of the bridge contract also included three, 30 day option periods. Additionally, although Ms. Knight indicated that the option periods were "included to provide for continued services in the event of a protest or other unplanned event that prevents the new, full, and open award from going into effect on the planned timeline," the court notes that if all the options are exercised the length of the sole source bridge contract would ultimately be 150 days.

In addition, as noted above, 41 U.S.C. § 3304(d), "Offer requests to potential sources," states "[a]n executive agency using procedures other than competitive procedures to procure property or services by reason of the application of paragraph (2) or (6) of subsection (a) shall request offers from as many potential sources as is practicable under the circumstances." Id. The Sole Source Justification & Approval only reference to requesting offers from "as many potential sources as is practicable," before deciding on the sole source bridge contract award to Ranger American of Puerto Rico was the comment that "[d]ue to the acquisition lead time limitation, the only other alternative considered was to award a short-term sole source contract to AGMA," but AGMA was not contacted, despite independently contacting the agency and representing AGMA could perform the requirement. Therefore, despite AGMA's offer of a smooth transition and the ability to perform the services required, FEMA did not test whether that was indeed the case. Additionally, the Sole Source Justification & Approval does not explain why other potential offerors were not considered before award, nor does it fully explain why AGMA could not be considered. The statements in Ms. Knight's declaration provide more coloration, but both arrive back to the same conclusion, that the quick turnaround made it impractical to seek out offers from other potential offerors. Although the Sole Source Justification & Approval claims that a "transition from Ranger poses substantial risk to continuity of operations; therefore, increasing risk to safety, security and health of the current federal employees, visitors and property at all existing temporary and fixed facilities currently being occupied in response to DR-4339-PR," the Sole Source Justification & Approval does not explain why. Again, Ms. Knight's declaration, submitted after the sole source decision was made, provides some context, but does not explain why no proposals would even be solicited. Although the court accepts the possibility that an evaluation of potential offers might have validated FEMA's concern about the potential transition, the decision to not even seek proposals appears baffling. Moreover, as acknowledged by Ms. Knight, AGMA specifically reached out to FEMA after the December 29, 2020 decision to inform FEMA of its interest in performing the bridge contract and represented that it could perform the work. Ms. Knight stated:

> And the only representation we had from AGMA's attorney was that his client was "ready, willing, and able" to perform, but he did not include any other information or documents that actually indicated a certainty that his client could perform, such as providing a list of available employees or showing any affirmative steps that his client had taken to expedite the transition process. Thus, we determined that it was not practicable to seek proposals from anyone other than the incumbent.

The contracting officer's declaration fails to explain why FEMA did not even try to follow up with AGMA. As noted in the December 29, 2020 Opinion, FEMA had previously made an award to AGMA for the same work on March 13, 2020. See AGMA Sec. Serv., Inc. v. United States, 2020 WL 8182122, at *11. In in making the original 2020 award to AGMA, which was subsequently cancelled after a protest was filed at the GAO and the agency took corrective action, the contracting officer noted that "AGMAs overall rating is Satisfactory on both technical and past performance. Although Ranger received a rating

of Good. [sic] Contracting Officer determined that there was no rational that substantiates paying a higher price to Ranger when the same services could be provided from AGMA," and concluded, "AGMA's proposal offers the best overall value to the Government and price is determined to be fair and reasonable." Id. at *10-11. In making the revised award to Ranger American of Puerto Rico for the prior solicitation, the contracting officer still noted, "[n]either offerors [AGMA and Ranger American of Puerto Rico] have known past performance issues. Both Ranger and AGMA proposals met the minimum solicitation technical requirements." Id. at *13 (brackets added).

The court notes that in paragraph 7 in the Sole Source Justification & Approval, "**Description of Efforts Made to Ensure that Offers are Solicited from as Many Potential Sources as is Practicable**," (capitalization and emphasis in original), FEMA indicated:

> Offerors will be solicited from as many potential sources as possible under the new solicitation that will be posted to the Contract Opportunities of beta.SAM.gov as required by FAR 5.201 a synopsis. In the case of this unusual and compelling urgency requirement, posting will be made within 30 days after contract award, in accordance with 6.305 procedures at paragraphs (b), (d), (e), and (f).

This is a reference, however, not to the sole source bridge contract, but to a future negotiated solicitation. The fact that FEMA intends to solicit "from as many potential sources as possible under the new solicitation," does not demonstrate that it met the requirement to "request offers from as many potential sources as is practicable under the circumstances" for the sole source bridge contract award. See 41 U.S.C. § 3304(d). If anything, the reference to the future procurement only puts a spotlight on the lack of effort, by FEMA "to request offers from as many potential sources as is practicable" in the sole source process.

In addition to 41 U.S.C. § 3304(a) and (d), 41 U.S.C. § 3304(e) provides:

> **(e) Justification for use of noncompetitive procedures.**--
> **(1) Prerequisites for awarding contract.**--Except as provided in paragraphs (3) and (4), an executive agency may not award a contract using procedures other than competitive procedures unless--
> **(A)** the contracting officer for the contract justifies the use of those procedures in writing and certifies the accuracy and completeness of the justification;
> **(B)** the justification is approved, in the case of a contract for an amount--
> **(i)** exceeding $500,000 but equal to or less than $10,000,000, by the advocate for competition for the procuring activity (without further delegation) or by an official referred to in clause (ii) or (iii);
> **(ii)** exceeding $10,000,000 but equal to or less than $50,000,000, by the head of the procuring activity or by a delegate who, if a member of the armed forces, is a general or flag officer or, if a civilian, is serving in a position in which the individual is entitled to receive the daily equivalent of

the maximum annual rate of basic pay payable for level IV of the Executive Schedule (or in a comparable or higher position under another schedule); or

**(iii)** exceeding $50,000,000, by the senior procurement executive of the agency designated pursuant to section 1702(c) of this title (without further delegation); and

**(C)** any required notice has been published with respect to the contract pursuant to section 1708 of this title and the executive agency has considered all bids or proposals received in response to that notice.

**(2) Elements of justification.**--The justification required by paragraph (1)(A) shall include--

**(A)** a description of the agency's needs;

**(B)** an identification of the statutory exception from the requirement to use competitive procedures and a demonstration, based on the proposed contractor's qualifications or the nature of the procurement, of the reasons for using that exception;

**(C)** a determination that the anticipated cost will be fair and reasonable;

**(D)** a description of the market survey conducted or a statement of the reasons a market survey was not conducted;

**(E)** a listing of any sources that expressed in writing an interest in the procurement; and

**(F)** a statement of any actions the agency may take to remove or overcome a barrier to competition before a subsequent procurement for those needs.

<u>Id.</u> (emphasis in original). Citing 41 U.S.C. § 3304(e)(1)(C), AGMA argues that "FEMA failed to publicize this [sole souce] requirement, and thus failed to consider the proposals it would have received if it had publicized it." Intervenor argues that because "FEMA had no intention to solicit proposals from any contractor other than Ranger, consistent with 41 U.S.C. § 1901," "no notice was 'required' under 41 U.S.C. § 3304(e)(1)(C)." As 41 U.S.C. § 3304(e)(1) states, however, "an executive agency may not award a contract using procedures other than competitive procedures unless . . . any required notice has been published with respect to the contract pursuant to section 1708 of this title and the executive agency has considered all bids or proposals received in response to that notice," it seems unlikely, as intervenor argues, that 41 U.S.C. § 1708 does not cover sole source or other noncompetitive procurements. Indeed, defendant argues that the agency complied with 41 U.S.C. § 3304(e)(1)(C). Defendant argues that "FEMA was required to, and did, as AGMA concedes in Mr. Edgardo Toro's [AGMA's Chief Executive Officer's] declaration, publish notice of the contract and state the reason justifying the use of non-competitive procedures and the contract awardee. As a result, FEMA's publication of the award to Ranger is in accordance with law." (internal citations omitted). In his declaration, Mr. Edgardo Toro stated, in part,

on January 11, 2021, I learned, from a public announcement, that FEMA had issued a sole source contract award to Ranger for this requirement on January 7, 2021. As described in the public announcement, the work to be done under the sole-source award to Ranger is exactly the same as the

work to be done under the Ranger contract that the Court has permanently enjoined, and also the same as the work to be done under the AGMA contract.

Despite defendant's confidence that FEMA publication of the sole source four days after award meets the publication requirement, the second half of the requirement is that "the executive agency has considered all bids or proposals received in response to that notice." FEMA could not consider "all bids or proposals received in response to that notice," if it already had made the award to Ranger American of Puerto Rico prior to the public notice. The failure to comply with the notice requirement appears to be another example of FEMA not complying with the requirements of 41 U.S.C. § 3304 in issuing the Sole Source Justification & Approval in its haste to issue the sole source bridge contract to Ranger American of Puerto Rico.

Protestor also claims that FEMA did not include a description of the market survey conducted or a statement of the reasons a market survey was not conducted," as required by 41 U.S.C. § 3304(e)(2)(D). The Sole Source Justification & Approval in paragraph 8, "**Determination by the Contracting Officer that the Anticipated Cost to the Government will be Fair and Reasonable**," (emphasis and capitalization in original), regarding the potential cost of the sole source bridge contract, stated: "The contracting officer will determine that the anticipated price(s) will be fair and reasonable based on a comparison of the contractor labor costs proposed to the costs paid for services under current competed contract and previous historical awards for similar contracts and labor categories." For the market research, the Sole Source Justification & Approval in paragraph 9, "**Description of Market Research**," FEMA stated: "Market research was not conducted as the Government determined that the time period from the previous market research current and relevant within 18 months. The market research is available under solicitation 70FBR220R00000002." (emphasis and capitalization in original). Regarding market research, the court notes that in Harmonia Holdings Group., LLC v. United States another Judge of this court addressed if prior market research was sufficient to meet the requirements for a justification for a sole source bridge contract, as follows:

When an agency's justification for issuing a sole-source award is based on "an urgent and compelling need," and is estimated to exceed the simplified acquisition threshold, the agency need only provide a "description of the market research conducted among schedule holders and the results or a statement of the reason market research was not conducted." 48 C.F.R. § 8.405-6(c)(2)(vi) (2019). The record clearly reflects the Agency's reason why it did not conduct additional market research—it performed extensive market research in 2017, 2018, and 2019 prior to awarding the original contract. AR 38. Specifically, the Agency indicated that the scope of work under the bridge contract mirrored that of the original contract. Id. As a result, the Agency had extensive market research from 2017 through 2019, as well as a complete understanding of the twelve most eligible offerors, their potential proposals, and their qualifications for a bridge contract award.

See id. Thus, CBP provided "a coherent and reasonable explanation of its exercise of discretion," AgustaWestland North America, Incorporated v. United States, 880 F.3d 1326, 1332 (Fed. Cir. 2018), such that its justification for the sole-source bridge contract was neither arbitrary not capricious. The specific circumstances surrounding this procurement—a full understanding of the potential offerors and proposals, a sufficient justification for the Agency's decision, and the "urgent and compelling need" for those services to continue—are sufficient for this Court to stay its hand. Accordingly, the Court finds that the Agency did not act in an arbitrary or capricious manner in awarding the sole-source bridge contract to Dev Tech.

Harmonia Holdings Grp., LLC v. United States, 145 Fed. Cl. 84, 91–92 (2019). In the case of the sole source bridge contract at issue, the agency also tried to rely on the market research conducted for the prior procurement. For the market research for the sole source bridge contract in the above captioned protest, Case No. 21-740C, the Sole Source Justification & Approval stated that the "Government determined that the time period from the previous market research current and relevant within 18 months. The market research is available under solicitation 70FBR220R00000002." As similarly explained in Contracting Officer Carolyn Knight's January 19, 2021 declaration:

> Because the market research from the previous solicitation remained accurate and had been conducted within 18 months, in accordance with FAR 10.002(b)(1), we did not conduct new market research. According to the market research, a number of contractors could theoretically provide armed guard services, including Ranger, AGMA, and other offerors from the previous solicitation.

(capitalization in original). If FEMA is relying on the market research from the prior solicitation, it raises questions as to why the agency was so resistant to considering AGMA, even though, as Ms. Knight noted AGMA "could theoretically provide armed guard services," and, as noted above, the agency found AGMA to be acceptable during the prior solicitation, and originally had determined "'AGMA's proposal offers the best overall value to the Government and price is determined to be fair and reasonable.'" AGMA Sec. Serv., Inc. v. United States, 2020 WL 8182122, at *11.

Similarly, protestor claims that FEMA did not properly make "a determination that the anticipated cost will be fair and reasonable," for the sole source bridge contract pursuant to 41 U.S.C. § 3304(e)(2)(C). As for the market research, FEMA appears to have relied on the prior solicitation because FEMA determined the price offered by Ranger American of Puerto Rico for the sole source bridge contract was reasonable, because as defendant's counsel explained at the oral argument, the price in the prior contract "it just happened to be the same," and "was fair and reasonable. . . ." Like the market research, the court cannot reconcile the agency's use of the pricing from prior solicitation, in which FEMA originally concluded "'AGMA's proposal offers the best overall value to the Government and price is determined to be fair and reasonable,'" with FEMA unwillingness to receive a proposal from AGMA for the sole source bridge contract.

Defendant's counsel at the oral argument posed the rhetorical question:

> And so I think, at the end of the day, this really comes down to was this -- I think Ranger used this quote in their brief, you know, "Don't let the perfect be the enemy of good,"[11] where is there enough in here, is there enough of an explanation for Your Honor to review record documentary evidence to show that what the agency did was acceptable for this sole-source bridge contract?"

Notably, the Sole Source Justification & Approval at paragraph 10, "**Any Other Facts Supporting the Use of Other Than Full and Open Competition**," noted that "[*t*]*his section presents an opportunity to strengthen the justification by presenting supplemental or supporting information. Do not summarize or duplicate information already stated in previous sections. This section should include information such as:*" the Sole Source Justification & Approval document answered simply: "NONE[.]" (emphasis and capitalization in original). After careful review of the Administrative Record, including the Sole Source Justification & Approval and even considering the contracting officer's post-award declaration, the court concludes that there is not enough evidence to demonstrate that the agency did enough to justify the sole source bridge contract award. Therefore, FEMA acted arbitrarily and capriciously when it awarded the sole source bridge contract to Ranger American of Puerto Rico. The agency did not follow the requirements of 41 U.S.C. § 3304 when it issued the Sole Source Justification & Approval. In sum, FEMA's sole source award lacked a rational basis.

As noted above, "[a] bid protest proceeds in two steps. First . . . the trial court determines whether the government acted without rational basis or contrary to law when evaluating the bids and awarding the contract," and "[s]econd . . . if the trial court finds that the government's conduct fails the APA review under 5 U.S.C. § 706(2)(A), then it proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct." Bannum, Inc. v. United States, 404 F.3d at 1351; T Square Logistics Servs. Corp. v. United States, 134 Fed. Cl. at 555; Archura LLC v. United States, 112 Fed. Cl. at 496. In describing the prejudice requirement, the Federal Circuit also has held that:

> To prevail in a bid protest, a protester must show a significant, prejudicial error in the procurement process. See Statistica, Inc. v. Christopher, 102 F.3d 1577, 1581 (Fed. Cir. 1996); Data Gen. Corp. v. Johnson, 78 F.3d 1556, 1562 (Fed. Cir. 1996). "To establish prejudice, a protester is not required to show that but for the alleged error, the protester would have been awarded the contract." Data General, 78 F.3d at 1562 (citation omitted). Rather, the protester must show "that there was a substantial chance it would have received the contract award but for that error." Statistica, 102 F.3d at 1582; see CACI, Inc.-Fed. v. United States, 719 F.2d 1567, 1574-75 (Fed. Cir. 1983) (to establish competitive prejudice, protester

---

[11] Ranger American of Puerto Rico's cross-motion for judgment on the Administrative Record argued: "AGMA seeks to make the [sic] 'perfect the enemy of the good' contrary to Federal procurement law."

must demonstrate that but for the alleged error, "'there was a substantial chance that [it] would receive an award--that it was within the zone of active consideration.'" (citation omitted)).

Alfa Laval Separation, Inc. v. United States, 175 F.3d at 1367; see also Glenn Def. Marine (ASIA), PTE Ltd. v. United States, 720 F.3d at 912; Allied Tech. Grp., Inc. v. United States, 649 F.3d at 1326; Info. Tech. & Applications Corp. v. United States, 316 F.3d at 1319.

"The Federal Circuit has made clear that the 'substantial chance' test applies in bid protests involving challenges to sole-source awards." PTC, Inc. v. United States, 143 Fed. Cl. 770, 780 (2019) (citing Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369-70 (Fed. Cir. 2002)). The Federal Circuit in Emery Worldwide Airlines, Inc. v. United States, 264 F.3d 1071 (Fed. Cir. 2001) held that

> When a party contends that the procurement procedure in a sole-source case involved a violation of a statute, regulation, or procedure, it must establish prejudice by showing that it would have had a substantial chance of receiving the award, see Statistica, 102 F.3d at 1582. A disappointed party can establish prejudice either by showing: (1) proceeding without the violation would have made the procurement official's decision to make a sole-source award rather than to conduct a competitive bidding process irrational, see 5 U.S.C. § 706; Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc., 419 U.S. 281, 281 (1974), and in a competitive bidding process, the complaining party would have a substantial chance of receiving the award, see Alfa Laval, 175 F.3d at 1367; or (2) proceeding without the violation, the complaining party would have a substantial chance of receiving the sole-source award, see id.

Emery Worldwide Airlines, Inc. v. United States, 264 F.3d at 1086; see also Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d at 1370 ("Thus, in this sole-source procurement, Myers bore the burden of establishing that it had a substantial chance of receiving the awards."); Harmonia Holdings Grp., LLC v. United States, 145 Fed. Cl. at 90; Innovation Dev. Enters. of Am., Inc. v. United States, 108 Fed. Cl. 711, 723 (2013).

In a sole source bid protest, "the Court inquires as to whether the plaintiff could have competed for the contract at issue if the procurement process was competitive. And so, while a plaintiff need not show that it would have received the award in a competition, a plaintiff must show that it would have been a qualified bidder to establish standing." PTC, Inc. v. United States, 143 Fed. Cl. at 780 (citing Myers Investigative & Sec. Servs. v. United States, 275 F.3d at 1369–70); Myers Investigative & Sec. Servs. v. United States, 275 F.3d at 1370 ("To have standing, the plaintiff need only establish that it "could compete for the contract" if the bid process were made competitive." (quoting Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d at 1334)); CliniComp Int'l, Inc. v. United States, 134 Fed. Cl. 736, 745 (2017), aff'd, 904 F.3d 1353 (Fed. Cir. 2018).

The court determined FEMA's actions were without a rational basis when it made the sole source award to Ranger American of Puerto Rico, and, therefore, the court must determine if there was a substantial chance of AGMA receiving the award, absent the agency's error. Albeit unusual for a sole source award, the prior solicitation process and previous bid protest in this court demonstrates AGMA had a substantial chance of AGMA receiving the award, absent the agency's error. In the court's December 29, 2020 Opinion on the earlier contract award, upon consideration of the record, the court determined

in the Revised Award Decision Memorandum, AGMA had the second highest number total in the numerical rating chart behind only Ranger American of Puerto Rico. For the best value trade-off analysis, the contracting officer stated:

Of the nine offerors, four received technical ratings higher than Unsatisfactory. Of those, Ranger had the best technical proposal with an overall rating of Good, while AGMA had an overall rating of Satisfactory but offered the lowest price.

For the Work Plan (Factor 1), both AGMA and Ranger submitted proposals that met the minimum solicitation requirement, and both were rated Good for this factor. The TET determined that both AGMA and Ranger were found to be technically equivalent in this area.

For the Project Management Plan (Factor 2), both AGMA and Ranger met the minimum solicitation requirement. AGMA's proposal demonstrated a plan in place to fulfill staffing island wide, proper assigned supervision and a detailed description of distribution of resources. AGMA received a rating of Satisfactory. Ranger's proposal demonstrated a detailed understanding of the contract management responsibilities, risk avoidance, and insurance of performance making the contract transition a seamless continuity of operations, as well as good command and field operations structure and a contingency plan in place. Ranger received a rating of Good.

For Factor 3, AGMA's proposed Quality Control Plan demonstrates a staff designated for quality control, a good plan for physical inspections and reporting tools and a good corrective action plan. Ranger's demonstrates a rigorous quality control system in place, monitoring processes, field inspections, supporting software, cost control software, reporting capacity, disciplinary strategies, and internal investigations; and robust training schedule potentially maximizing quality of work. Ranger received a rating of Good.

> For the Past Performance factor, Ranger received a rating of Superior and AGMA received a rating of Neutral. Neither offerors have known past performance issues. Both Ranger and AGMA proposals met the minimum solicitation technical requirements. Overall, AGMA and Ranger were determined to be technically equivalent with regards to Work Plan, but Ranger's Project Management Plan and Quality Control Plan were both technically superior to AGMA's. Ranger received a Past Performance rating of Superior, while AGMA received a Past Performance rating of Neutral. Ranger received an overall rating of Good, while AGMA received an overall rating of Satisfactory. However, AGMA's proposed price was lower than Rangers. [sic]
>
> . . .
>
> Ranger had a higher rating with regard to the Project Management Plan, Quality Control Plan, and Past Performance. While Offeror 2's (AGMA) proposal was perfectly adequate, Offeror 6's (Ranger) was significantly better.

The best value trade-off analysis demonstrates that there was a substantial chance of AGMA receiving the award, but for the errors in the procurement process.

AGMA Sec. Serv., Inc. v. United States, 2020 WL 8182122, at *38. The sole source bridge contract to Ranger American of Puerto Rico for was for the same services at issue as in the previous bid protest, Case No. 20-926C. As explained in the Sole Source Justification & Approval:

> **2. Nature and/or Description of the Action being Approved.** *A short paragraph or two describing the effort to be placed on contract, or the modification action. This section should include all of the following information:*
>
> (a) The FEMA requires the provision of a short-term bridge contract for continued Armed Security Guard Services in support of the FEMA's Recovery mission, Disaster (DR)-4339-Puerto Rico (PR). The contractor shall perform duties/tasks necessary to provide Protective Service Officers (PSO)s for physical security services throughout the entire island of Puerto Rico including municipalities of Vieques and Culebra.
>
> . . .
>
> **3. Description of Supplies/Services.** *Describe the supplies or services to be acquired. Include the purpose the supplies or services are intended to fulfill or the function the supplies or services provide.*

> The requirement is to provide continued Armed Security Guard Services through the provision of Protective Service Officers (PSOs). The contractor shall perform duties/tasks necessary to provide PSOs for physical security services throughout the entire island of Puerto Rico including municipalities of Vieques and Culebra. Patrol vehicles shall be provided, when required by FEMA, based on location characteristics, vulnerabilities and risks. The period of performance will be 150 calendar days.

(capitalization and emphasis in original). The solicitation at issue in the prior bid protest explained that the solicitation was for "contracted Protective Service Officers (PSO) and Patrolled Services to safeguard federal employees, visitors and property at both temporary and fixed facilities during disaster and emergency declarations for DR-4339 (all counties and municipalities within the Commonwealth of Puerto Rico)."

The Sole Source Justification & Approval for the sole source bridge contract also noted that "[m]arket research was not conducted as the Government determined that the time period from the previous market research current and relevant within 18 months. The market research is available under solicitation 70FBR220R00000002." As similarly explained in Contracting Officer Carolyn Knight's January 19, 2021 declaration:

> Because the market research from the previous solicitation remained accurate and had been conducted within 18 months, in accordance with FAR 10.002(b)(1), we did not conduct new market research. According to the market research, a number of contractors could theoretically provide armed guard services, including Ranger, AGMA, and other offerors from the previous solicitation.

(capitalization in original). The services required in the sole source contract were the same as at issue in the prior solicitation, which the court has determined AGMA had a substantial chance of receiving an award, absent the agency's errors. Therefore, given that the court determination that AGMA had a substantial chance of receiving an award previously, the court likewise concludes that AGMA could have competed or should have been given a chance to compete for the requirement if FEMA had made the bid process competitive for the requirement at issue in the above captioned protest. See Myers Investigative & Sec. Servs. v. United States, 275 F.3d at 1370.

Permanent Injunction

Having found that FEMA's award of a sole source bridge contract to Ranger American of Puerto Rico was arbitrary and capricious, and that AGMA was prejudiced by FEMA, the court turns to consider whether AGMA is entitled to the requested injunctive relief. In Centech Group, Inc. v. United States, the Federal Circuit set out the test for a permanent injunction, stating:

> To determine if a permanent injunction is warranted, the court must consider whether (1) the plaintiff has succeeded on the merits of the

case; (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief; (3) the balance of hardships to the respective parties favors the grant of injunctive relief; and (4) the public interest is served by a grant of injunctive relief.

Centech Grp., Inc. v. United States, 554 F.3d at 1037 (citing PGBA, LLC v. United States, 1228–29 (Fed. Cir. 2004) (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987))); see also Nat'l Steel Car, Ltd. v. Canadian Pacific Ry., Ltd., 357 F.3d 1319, 1325 (Fed. Cir.) (finding that a plaintiff who cannot demonstrate actual success on the merits cannot prevail on its motion for permanent injunctive relief), reh'g and reh'g en banc denied (Fed. Cir. 2004); MVM, Inc. v. United States, 149 Fed. Cl. 478, 492 (2020); Kiewit Infrastructure West Co. v. United States, 147 Fed. Cl. 700, 712 (2020); Remington Arms Co., LLC v. United States, 126 Fed. Cl. 218, 232 (2016defe Success on the merits has been said to be "the most important factor for a court to consider when deciding whether to issue injunctive relief." Dellew Corp. v. United States, 108 Fed. Cl. 357, 369 (2012) (citing Blue & Gold Fleet, L.P. v. United States, 492 F.3d at 1312). While success on the merits is necessary, it is not sufficient for plaintiff to establish that it is entitled to injunctive relief. See Contracting, Consulting, Eng'g LLC v. United States, 104 Fed. Cl. at 353 ("Although plaintiff's entitlement to injunctive relief depends on its succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citing PGBA, LLC v. United States, 389 F.3d at 1228-29). The four factors are to be considered collectively, rather than individually, such that

> "[n]o one factor, taken individually, is necessarily dispositive. . . . [T]he weakness of the showing regarding one factor may be overborne by the strength of the others." FMC Corp. [v. United States], 3 F.3d [424] at 427 [(Fed. Cir. 1993)]. Conversely, "the absence of an adequate showing with regard to any one factor may be sufficient" to deny injunctive relief. Id.

Sheridan Corp. v. United States, 94 Fed. Cl. 663, 668 (2010); see also Computer World Servs. Corp. v United States, 147 Fed. Cl. 584, 595 (2020); Wallace Asset Mgmt., LLC v. United States, 125 Fed. Cl. 718, 727 (2016).

In the above captioned pre-award bid protest, as discussed above, AGMA established success on the merits by demonstrating that FEMA acted without a rational basis in awarding a sole source bridge contract to Ranger American of Puerto Rico. Having concluded that AGMA succeeded on the merits of its bid protest, the court considers the additional factors to determine whether protestor is entitled to a permanent injunction. Protestor alleges that it will suffer irreparable harm if the court does not issue an injunction and that the balance of the hardships and the public interest weigh in favor of granting an injunction. Defendant and intervenor contend that AGMA has not demonstrated irreparable harm, that the balance of hardships does not weigh in protestor's favor, and that an injunction will not serve the public interest.

Regarding whether or not the protestor will suffer irreparable harm if injunctive relief is not granted, "[w]hen assessing irreparable injury, '[t]he relevant inquiry in

weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction.'" Insight Sys. Corp. v. United States, 110 Fed. Cl. 564, 582 (2013) (quoting Magellan Corp. v. United States, 27 Fed. Cl. 446, 447 (1993)); see also Rush Constr., Inc. v. United States, 117 Fed. Cl. 85, 101 (2014); CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. at 494; Overstreet Elec. Co. v. United States, 47 Fed. Cl. 728, 743 (2000). "As to the second factor, irreparable harm exists when an offeror has lost the opportunity to compete fairly for a contract." Kiewit Infrastructure West Co. v. United States, 147 Fed. Cl. at 712 (citing HP Enter. Servs., LLC v. United States, 104 Fed. Cl. 230, 245 (2012)). "The Court of Federal Claims has repeatedly held that a protester suffers irreparable harm if it is deprived of the opportunity to compete fairly for a contract." CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. at 494 (citing CRAssociates, Inc. v. United States, 95 Fed. Cl. 357, 390–91 (2010); Serco, Inc. v. United States, 81 Fed. Cl. at 501–02; Impresa Construzioni Geom. Domenico Garufi v. United States, 52 Fed. Cl. 826, 828 (2002)); see also Remington Arms Co., LLC v. United States, 126 Fed. Cl. at 232 (explaining that the loss of potential work and profits from a government contract constitutes irreparable harm); BINL, Inc. v. United States, 106 Fed. Cl. 26, 48 (2012) ("Irreparable harm is established by a lost opportunity to fairly compete."); HP Enter. Servs., LLC v. United States, 104 Fed. Cl. at 245 (citing several cases); Magnum Opus Techs., Inc. v. United States, 94 Fed. Cl. 512, 544 (2010) ("'A lost opportunity to compete in a fair competitive bidding process for a contract is sufficient to demonstrate irreparable harm.'"), motion to amend denied, 94 Fed. Cl. 553 (2010) (internal citations omitted). The loss of a valuable business opportunity "deriving from a lost opportunity to compete in a fair competitive bidding process for a contract," can be sufficient to constitute irreparable harm. See Overstreet Elec. Co. v. United States, 47 Fed. Cl. at 744 (citing United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. 312, 323 (1998)); see also KWR Constr., Inc. v. United States, 124 Fed. Cl. 345, 363 (2015) (agreeing with protestor that the lost opportunity to compete for a future contract will cause irreparable harm); Impresa Construzioni Geom. Domenico Garufi v. United States, 52 Fed. Cl. at 828; United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. at 323 ("[T]he opportunity to compete for a contract and secure any resulting profits has been recognized to constitute significant harm."). According to a judge of this court, "[t]he court has repeatedly held that 'the loss of potential profits' from a government contract constitutes irreparable harm." BINL, Inc. v. United States, 106 Fed. Cl. at 49 (quoting Furniture by Thurston v. United States, 103 Fed. Cl. 505, 520 (2012) (citing BayFirst Sols., LLC v. United States, 102 Fed. Cl. 677, 696 (2012))); see also MORI Assocs., Inc. v. United States, 102 Fed. Cl. 503, 552–53 (2011).

AGMA argues that

[i]njunctive relief is determined by the likelihood of success on the merits, the balance of hardships, and the public interest. As to these remaining factors to be considered for an injunction, the situation with regard to enjoining the sole-source bridge contract award is not materially different from the situation regarding enjoining the previous contract award to Ranger.

Defendant argues that AGMA fails to identify any irreparable harm it will suffer as a result of FEMA's actions and the balance of the harms favors the United States." Intervenor similarly argues "AGMA cannot show cognizable and immediate irreparable harm," that "the balance of harms weighs against issuing an injunction," and that the "public interest would not be served by an injunction."

Judges of the Court of Federal Claims have determined that a protester suffers irreparable injury when it has been deprived the opportunity to compete fairly for a contract. See Wackenhut Servs., Inc. v. United States, 85 Fed. Cl. 273, 311 (2008) (citing Cardinal Maint. Serv., Inc. v. United States, 63 Fed. Cl. 98, 110 (2004)); see also Info. Scis. Corp. v. United States, 73 Fed. Cl. 70, 127 (2006), recons. in part, 75 Fed. Cl. 406 (2007). FEMA's arbitrary and capricious conduct denied AGMA a fair opportunity to compete for the contract award, and, as in the prior bid protest, this factor favors protestor.

Regarding the balance of harms, intervenor cites to the declaration of Contracting Officer Carolyn Knight's declaration which stated:

> FEMA's facilities in Puerto Rico would be forced to close due to the vulnerability and security risk that such an absence would create for Government personnel and property. This, in turn, would halt FEMA's LTRO [Long-Term Recovery Operations] in Puerto Rico, leave 1,500 employees stranded without a place to go for support or to conduct their daily duties, and prevent the distribution of billions of dollars in public and individual assistance that is necessary to the recovery efforts. In addition, a lack of armed guards would leave all of FEMA's assets on the island exposed to vandalism, theft, and/or tampering, potentially costing FEMA incalculable amounts of money to repair or replace, further hindering recovery efforts in Puerto Rico.

This statement by the contracting officer assumes that no other contract vehicle, such as a proper sole source contract or properly planned and executed competitive contract could have been put in place by the agency. Intervenor also argues that the harm to Ranger "includes lost resources in terms (a) preparing its proposal and pursuing its March 2020 GAO protest, and (b) hiring and training personnel, purchasing equipment such as bullet proof vests, and coordinating for over 200 personnel to work on the contract." Despite the foregoing, the court finds that the harm to Ranger is outweighed by the harm to AGMA in having a fair opportunity to compete for the requirement. Defendant similarly argues that "it is clear that FEMA would be severely harmed if prohibited from continuing the bridge contract. Without the bridge contract, 12 FEMA facilities across Puerto Rico would be forced to shut down because without armed security services, they could not protect millions of dollars' worth of assets and personnel at FEMA properties." Again, it is not clear to the court that the only possible outcome if the court grants an injunction, and depending on the timing of the effective date, would cause a complete shutdown of FEMA facilities. AGMA is entitled to have a fair opportunity to compete for the requirement and to have the agency acquire that requirement in a rational and proper way.

As to the public interest factor, "'[t]he public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion.'" CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. at 495 (quoting PGBA, LLC v. United States, 57 Fed. Cl. 655, 663 (2003)); see also Cohen Fin. Servs., Inc. v. United States, 110 Fed. Cl. 267, 289 (2013); United Int'l Investigative Servs., Inc. v. United States, 41 Fed. Cl. at 323 ("[T]he public has a strong interest in preserving the integrity of the procurement process.") (citing Parcel 49C Ltd. P'ship v. United States, 31 F.3d 1147, 1153 (Fed. Cir. 1994)); Am. Safety Council, Inc. v. United States, 122 Fed. Cl. 426, 444 (2015) (holding that "the public interest will be served by an injunction by preserving the integrity of the procurement process"); Applied Bus. Mgmt. Sol., Inc., LLC v. United States, 117 Fed. Cl. 589, 608 (2014); BINL, Inc. v. United States, 106 Fed. Cl. at 49 ("With regard to the public interest, it is well-settled that there is a public interest in remedying violations of law."). An important public interest is served for the government to conduct an "honest, open, and fair competition" under the FAR, because such competition improves the overall value delivered to the government in the long term. See CW Gov't Travel, Inc. v. United States, 110 Fed. Cl. at 495. "[T]he public interest is served by injunctive relief where the court has concluded that the government violated an applicable regulation and related provisions in the solicitation, and 'maintenance of the integrity of the procurement process weighs heavily in favor of granting a permanent injunction.'" Q Integrated Cos. LLC v. United States, 126 Fed. Cl. 124, 147 (2016) (quoting Springfield Parcel C, LLC v. United States, 124 Fed. Cl. 163, 193 (2015)).

Defendant argues that the agency's decision "to award a short-term bridge contract for the express purpose of continuing vital and required services during the pendency of the new solicitation's evaluation and award is an attempt to maintain the integrity of the procurement system, such that this factor weighs heavily in favor of the United States." The court, however, found that the sole source bridge contract award to Ranger American of Puerto Rico was not made in a proper and rational manner, and, therefore, the court finds that there is a public interest and in permanently enjoining FEMA from continuing with the faulty sole source contract and maintaining the integrity of the government procurement system . On balance, the injunctive factors weigh in favor of protestor and in favor of granting an injunction for Ranger American of Puerto Rico's performance of the sole source contract with FEMA.

## CONCLUSION

As described above, the agency's actions during the sole source process were without a rational basis. Protestor's motion for judgment on the Administrative Record and protestor's motion for injunctive relief are **GRANTED**. Defendant's and intervenor's motions for judgment on the Administrative Record are **DENIED**. After consultation with the parties, and based on representations made by the government to the court at the oral argument, including that a 30 day transition period is required after award of the subsequent competitive procurement, and in order not to cause a disruption of security services in Puerto Rico, the injunction shall be effective on **Monday, April 5, 2021.** This schedule is consistent with the government's representations of an imminent award of the competitive procurement. On April 5, 2021, FEMA shall be enjoined from continuing the performance of Ranger American of Puerto Rico's sole source bridge contract. As noted,

44

this schedule is in accordance with the schedule provided to the court as workable by the government, including FEMA representatives. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**